HENRY A. OSBORNE AND WIFE *vs.* BUTLER B. WARREN.

The statute (Gen. Statutes, tit. 19, ch. 17, sec. 5,) provides that every person who "shall wittingly and unlawfully throw down or leave open any bars, gate or fence" belonging to any enclosure, shall pay to the party injured double damages and a sum not exceeding five dollars, to be recovered in an action of trespass. The defendant, in a controversy with the plaintiffs as to a right of way over their land, threw down their fence, claiming and believing that he had a right to do so, but the court found that he had no right of way. Held that his case fell within the intent of the statute.

TRESPASS for throwing down a fence upon land of the plaintiffs, brought under Gen. Statutes, p. 489, sec. 5, and appealed from the judgment of a justice of the peace to the Court of Common Pleas for Hartford County. In the latter court (*McManus, J.,*) the facts were found and judgment rendered for the defendant, and a motion in error to this court filed by the plaintiffs. The case is fully stated in the opipion.

*C. E. Perkins,* for the plaintiffs.

*S. P. Newell,* for the defendant.

PARDEE, J. The plaintiffs brought an action of trespass against the defendant, founded upon a statute which is to be found in section 5, chapter 17, title 19, page 489, of the Revision of 1875, and is in the following words: "Every person who shall wittingly and unlawfully throw down or leave open any bars, gate or fence belonging to any particular enclosure or common field, shall pay to the party injured double damages, and a sum not exceeding five dollars, according to the nature and aggravation of the trespass, to be recovered in an action of trespass." In their declaration they alleged that he had thrown down the fence enclosing their land, whereby they had suffered damages to the extent of ten dollars, and they asked for judgment for twice that sum, together with the additional sum of five dollars, in accordance with the provisions of the statute.

The writ was made returnable before a justice of the peace; the parties appeared and the defendant pleaded the general

issue, with a notice in these words: "The plaintiffs will take notice that on the trial of the above entitled cause the defendant will claim and offer evidence to prove, should the same become necessary, that he with others has a right of way over and across the premises described in the plaintiffs' declaration and through the fence claimed in the plaintiffs' declaration to have been thrown down by the defendant. Also that the defendant is the sole owner of said fence, and that the same stands wholly upon his, the defendant's land." Upon the hearing the magistrate found the issue for the defendant, and ordered that he should recover his costs. From this judgment the plaintiffs appealed to the Court of Common Pleas for Hartford County at the January term, 1876, from which it came to, and was heard at, the term of said court holden in January, 1877. Upon the trial it appeared that in August, 1873, the plaintiffs became the owners of a piece of land adjoining premises then, and for some time previous thereto, in the ownership of the defendant. Before the purchase by the plaintiffs he and others had passed from his land through an opening in the dividing fence upon and across this lot. When the plaintiffs became the owners of it they closed the opening in the fence and forbade passage through it; on November 29th, 1875, they replaced boards which had been knocked off at the former place of passage, and subsequently, upon the same day, the defendant knocked them off, claiming that he had a right of way over the plaintiffs' land through the opening, and that he had a right to throw down the fence for the further reason that it was not upon the true line of division and stood wholly upon his land and therefore belonged to him. The court found that he believed he had the rights claimed by him and that he threw down the fence under such claim and belief; but found, also, that in fact he had no right of way and no right to throw down the fence; and that he intentionally did the act knowing it to be against the will and notice of the plaintiffs. Thereupon they asked the court to hold that the defendant "wittingly and unlawfully" threw down the fence, and to render judgment in their favor and assess the damages in accordance with the rule provided by

the statute. But the court refused so to hold, and held as matter of law, upon the facts, that although the defendant had no right to throw down the fence, yet, having done it under the claim aforesaid, believing that he had a right so to do, he had not made himself liable to an action under the statute, but would be liable to ordinary damages in an ordinary action of trespass, and affirmed the judgment of the justice of the peace. Whereupon the plaintiffs filed their motion in error, assigning for reason that inasmuch as the facts bring the act within the statute, to constitute the offence mentioned therein it is not important or material whether the defendant believed that he had a right to do the acts complained of or not.

That we may know the precise force of the word "wittingly" we resort to the dictionary. Webster defines it thus: "Knowingly—with knowledge—by design." We must presume that in the common speech of the people it imported knowledge simply; that the legislature understood and used it in the same sense, and that the statute is aimed at persons who knowingly and by design throw down fences and leave open gates and bars, having no legal right so to do, excluding only cases which are the result of accident or forgetfulness. The legislature designed to punish to the extent of double damages all persons who, having controversies with adjoining owners as to dividing lines, take the law into their own hands, and render judgment and do execution in their own favor, thereby exposing enclosures to serious damage from incursions of cattle, in the absence and without the knowledge of the owner. The law intends that all persons shall adjust such differences through its appointed means.

The legislature has not been unmindful of the fact that men may commit trespasses ignorantly, and has provided a measure of relief in certain cases; for instance, section 4, page 489, of the Revision of 1875, the section immediately preceding the one under consideration, provides that whoever shall cut a tree standing upon the land of another shall pay the owner three times its value and two dollars in addition; but if the trespasser can satisfy the court that he did the act

through mistake and believed the tree to be upon his own land, he shall pay only the real value of it. So too when the legislature has desired to punish trespasses prompted by malice it has been precise in the use of language; for instance, the seventh section, page 489, provides that when any person shall "willfully and without color of right commit a trespass on the land of another," he may be sent to jail in default of payment of damages. And section 31, page 505, provides in effect that whoever " shall willfully and without color of right" cut trees on the land of another shall be fined not more than twenty dollars or imprisoned not more than ninety days, or both; apparently using the expression *"without color of right"* in cases where it is intended to give the trespasser the benefit of a mistake as to his legal rights.

Not seeing therefore that the legislature has in fact or intent given to the word any force or meaning beyond that which it has in the common speech of the people, we must say that it imports knowledge only, and not knowledge and malice combined; and that the statute is applicable to persons who by design throw or leave down fences, bars and gates, irrespective of the question whether the act is done under a belief of right or is prompted by malice.

There is error in the judgment complained of.

In this opinion the other judges concurred; except CARPEN-TER, J., who dissented.