******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CATHERINE LEDERLE *v.* STEVAN SPIVEY
## (SC 20016)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the Appellate Court, which reversed the trial court's award of appellate attorney's fees to the plaintiff. Following the dissolution of the parties' marriage, the defendant filed a motion to open the dissolution judgment, which the trial court denied. The defendant appealed to the Appellate Court, which upheld the denial of the motion. In his appeal from the denial of the motion to open, the defendant claimed that the trial court conducted part of the hearing on the motion to open in chambers and off the record and improperly denied the motion without hearing testimony or taking evidence. The plaintiff thereafter filed a motion for attorney's fees incurred in defending that appeal. The trial court, finding that the defendant's appeal from the denial of the motion to open was taken in bad faith and was entirely without color, awarded the plaintiff attorney's fees under the bad faith exception to the American rule that a prevailing party may not recover attorney's fees from the opposing party in the absence of a statutory exception or certain exceptional circumstances. On appeal from the trial court's award of attorney's fees, the Appellate Court concluded that the trial court had abused its discretion in awarding attorney's fees to the plaintiff on the basis of the bad faith exception because its decision lacked the requisite high degree of specificity as to its finding that the defendant's appeal from the denial of the motion to open was entirely without color. Subsequently, the plaintiff, on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court incorrectly concluded that the trial court had abused its discretion in awarding attorney's fees to the plaintiff under the bad faith exception to the American rule, the trial court's subordinate findings having been sufficiently specific to support its ultimate findings that the defendant acted in bad faith in knowingly bringing appellate claims that were entirely lacking in color; the trial court's findings that there was no evidence in the record to support the defendant's claim that part of the hearing on the motion to open was conducted in chambers and off the record, that the defendant was physically present at all court proceedings and did not object on the ground that the court was holding part of the hearing in chambers and off the record, and that the parties expressly agreed in open court to a bifurcated process by which the trial court would hear evidence only if it made a certain legal conclusion that it ultimately did not make established the defendant's firsthand knowledge regarding the basis of his appellate claims and supported the ultimate finding that the defendant knew that his claims lacked merit and, therefore, acted in bad faith in pursuing those claims on appeal.

2. The defendant could not prevail on his claim that, even if the trial court did not abuse its discretion in determining that an award of attorney's fees was warranted under the bad faith exception to the American rule, the amount of the award was unreasonable and excessive: the trial court acted within its discretion in awarding the plaintiff $30,000 in attorney's fees, the evidence from the record of the multiday hearing having indicated that the court, in awarding the plaintiff less than one half of the fees requested, considered the testimony of the plaintiff's attorney regarding his fee affidavit, the fee affidavit itself, the relative rates charged by the attorneys for the parties, and the challenges raised by the defendant regarding certain charges; moreover, a reasonable reading of the transcripts and the fee affidavit supported the conclusion that the trial court had discounted all but the fees for the services rendered by the plaintiff's attorney himself.

Argued January 24—officially released August 27, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, and referred to the judicial district of Middlesex, Regional Family Trial Docket; thereafter, the case was tried to the court, *Abery-Wetstone, J.*; judgment dissolving the marriage and granting certain other relief; subsequently, the court, *Emons, J.*, denied the defendant's motion to open the judgment, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Alvord* and *Harper, Js.*, which affirmed the trial court's judgment; thereafter, the court, *Emons, J.*, granted the plaintiff's motion for attorney's fees, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Beach* and *Danaher, Js.*, which reversed the trial court's award of attorney's fees and remanded the case for further proceedings, from which the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Tara C. Dugo*, with whom, on the brief, was *Norman A. Roberts II*, for the appellant (plaintiff).

*David V. DeRosa*, for the appellee (defendant).

*Opinion*

KAHN, J. In this dissolution of marriage action, the plaintiff, Catherine Lederle, appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing the decision of the trial court, which had awarded appellate attorney's fees to the plaintiff under the bad faith exception to the American rule.[2] The plaintiff contends that the Appellate Court did not accord the proper level of deference in determining that the trial court's findings lacked sufficient specificity. The defendant, Stevan Spivey, responds that the Appellate Court properly applied the abuse of discretion standard and also correctly concluded that, in determining that the appellate claims lacked color, the trial court improperly assessed the conduct of the defendant's attorney rather than that of the defendant. The defendant claims that the amount of the award was unreasonable and excessive because (1) the plaintiff's success in the appeal for which fees were awarded was not due to the efforts of the plaintiff's counsel, and (2) the defendant's attorney charged him a significantly lower amount of fees for representing him in that appeal.[3] We reverse the judgment of the Appellate Court and conclude that the trial court did not abuse its discretion in setting the amount of the fees.

The Appellate Court opinions in the present case have set forth the following relevant facts and procedural history. "The parties were married in Darien on December 31, 1998. One child was born of the marriage in 2000. Thereafter, the marriage broke down irretrievably, and, in March, 2005, the plaintiff commenced an action seeking to dissolve the marriage. On May 2, 2007, the court, *Abery-Wetstone, J.*, rendered a judgment of dissolution [2007 decision]. As part of this decision, the court acknowledged the plaintiff's claim that she needed to move to Virginia in order to remain competitive in her employment with Lexmark, and found that it was in the best interest of the child to relocate with her to Virginia. The defendant appealed from the judgment, arguing, inter alia, that the court improperly permitted the plaintiff to relocate with their minor child to Virginia. [The Appellate Court] affirmed the judgment of the court, and [the] Supreme Court denied certification to appeal. *Lederle* v. *Spivey*, 113 Conn. App. 177, 965 A.2d 621 [(*Lederle I*)], cert. denied, 291 Conn. 916, 970 A.2d 728 (2009)." *Lederle* v. *Spivey*, 151 Conn. App. 813, 814–15, 96 A.3d 1259 (*Lederle II*), cert. denied, 314 Conn. 932, 102 A.3d 84 (2014). The defendant subsequently learned that the plaintiff had not started her employment at Lexmark because she lost that position but had started a position at a different company in Virginia.

"The defendant subsequently filed an amended motion to open the judgment, in which he claimed that [t]he plaintiff, in her trial testimony committed fraud with respect to the issue of her Lexmark employment

and specifically whether or not [her Lexmark employment position] was available in Virginia on the dates testified to. . . . According to the defendant, [t]he plaintiff had a continuing duty to disclose the status of her job situation with Lexmark after [the May 2, 2007] judgment [of the trial court], and before the Appellate Court issued a . . . decision in [March] 2009. . . . The defendant further argued that the plaintiff's failure to disclose the status of her job situation with Lexmark constituted fraud with respect to a material fact or facts which ultimately led to [the trial] court's conclusion that [the] plaintiff and the minor child should be permitted to relocate from the state of Connecticut to the state of Virginia for primarily employment purposes. . . .

"The court, *Emons, J.*, heard oral argument on the motion and, after receiving a memorandum of law from counsel for each party in support of their position, issued a memorandum of decision denying the motion to open on January 28, 2013 [2013 decision]. In reaching its decision, the court found that [a]fter the May 2, 2007 judgment, on June 5, the plaintiff lost her employment at Lexmark. . . . On or about August 20, 2007, the plaintiff relocated to Virginia and at or about the same time, began a new job at Xerox, also located in Virginia. The court noted that Judge Abery-Wetstone found numerous reasons why relocation was in the best interest of the minor child and that no single factor controlled the decision of the court. On the basis of the foregoing, the court held that while the plaintiff did have a duty to disclose that she lost her Lexmark job and procured a new one at Xerox, prior to the Appellate [Court's] decision, her failure to disclose [did] not constitute fraud." (Citations omitted; internal quotation marks omitted.) *Lederle* v. *Spivey*, 174 Conn. App. 592, 594–95, 166 A.3d 636 (2017) (*Lederle III*).

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming that the court "(1) improperly held a portion of the hearing on the motion to open in chambers and off the record; and (2) abused its discretion by deciding the motion to open, which was based on a claim of fraud and therefore involved a question of material fact, without the benefit of sworn testimony or other evidence."[4] *Lederle II*, supra, 151 Conn. App. 814. The Appellate Court did not directly address either of the defendant's claims. It held that the record was inadequate to review the defendant's first claim. Id., 816. The court rejected the defendant's second claim on the basis of its conclusion that, once the final judgment of dissolution had been rendered, as a matter of law, the plaintiff had no continuing duty to disclose the loss of her Lexmark employment.[5] Id., 819.

While the defendant's appeal from the denial of his motion to open was pending before the Appellate Court, the plaintiff filed the motion that gave rise to the present

appeal, seeking appellate attorney's fees for the then pending appeal. The trial court held a hearing on the motion on October 30, 2013, but, because the appeal before the Appellate Court was still pending, continued the matter until after the defendant's appeal was resolved. On February 10, 2015, after the Appellate Court had affirmed the judgment of the trial court denying the motion to open the judgment of dissolution; *Lederle II*, supra, 151 Conn. App. 814; the trial court resumed the hearing on the motion for appellate attorney's fees and, subsequently, issued a memorandum of decision, granting the plaintiff's motion for attorney's fees on the basis of its finding that the defendant's appeal was taken in bad faith and was entirely without color (2015 decision).[6]

The defendant appealed from the judgment of the trial court to the Appellate Court, which held that the trial court had abused its discretion in awarding attorney's fees because "its decision lacked the 'high degree of specificity' as to its finding that the defendant's appeal was entirely without color." *Lederle III*, supra, 174 Conn. App. 598. Specifically, the Appellate Court explained that the trial court, in its 2015 decision, (1) did not properly set forth separate, subordinate findings to support each of its ultimate findings as to lack of colorability and bad faith; id., 603–604; and (2) in determining that the defendant's claims lacked color, improperly failed to apply the proper standard for colorability, which, according to the Appellate Court, should have been the standard that applies to a party rather than an attorney. Id., 604. This appeal followed.

We begin by setting forth the general principles governing the application of the bad faith exception to the American rule. "[T]his state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable [attorney's] fee from the loser. . . . That rule does not apply, however, where the opposing party has acted in bad faith. . . . It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. . . . This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. . . . It applies both to the party and his counsel." (Citations omitted; internal quotation marks omitted.) *Maris* v. *McGrath*, 269 Conn. 834, 844–45, 850 A.2d 133 (2004).

We have explained that, in order to impose sanctions under the bad faith exception, "the trial court must find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith." (Emphasis in original.) *Berzins* v. *Berzins*, 306 Conn. 651, 663, 51 A.3d 941 (2012). The court must make these findings with "a high degree of specificity . . . ." (Internal quo-

tation marks omitted.) Id., 662. The requirement of an independent finding that the challenged actions or claims are entirely without color ensures that "fear of an award of [attorney's] fees against them will not deter persons with colorable claims from pursuing those claims . . . ." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 845. The requirement of that independent finding means that, if a court concludes that a claim is colorable, it cannot award attorney's fees, even if the court were to conclude that the person against whom sanctions are sought acted in bad faith. When, as in the present case, the actor's bad faith is predicated on the theory that he knowingly brought claims entirely lacking in color, colorability and bad faith are, by necessity, closely linked. For that reason, we take the opportunity to clarify the distinction between colorability and bad faith.

Colorability is measured by an objective standard, whereas bad faith is measured by a subjective one. Colorability focuses on the merits of the claim. A "colorable claim" is defined as one "that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." Black's Law Dictionary (9th Ed. 2009) p. 282. Put another way, a claim is colorable if, given the facts presented and the current law (or a reasonable extension thereof), the claim arguably has merit. Although we have stated that the standard for colorability varies depending on whether the person against whom sanctions are sought is a party or the party's attorney; see *Maris* v. *McGrath*, supra, 269 Conn. 847; we now clarify that the inquiry is the same in either case. As the United States Court of Appeals for the Second Circuit has explained, "[a] claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Nemeroff* v. *Abelson*, 620 F.2d 339, 348 (2d Cir. 1980). Put simply, the colorability inquiry asks whether there is a *reasonable* basis, given the facts, for bringing the claim, regardless of whether it is brought by an attorney or a party.

A determination of bad faith, by contrast, rather than focusing on the objective, reasonable beliefs of the person against whom sanctions are sought, focuses on subjective intent. We have emphasized that, in determining whether a party has engaged in bad faith, "[t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 847. From that conduct, the court may infer the subjective intent of the person against whom sanctions are sought. Some examples of evidence that would support a finding of bad faith include "a party's use of oppressive tactics or its wilful violations of court orders"; id., 845–46; or a finding

that the challenged actions "[are taken] for reasons of harassment or delay or for other improper purposes . . . ." *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 394, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 155, 735 A.2d 333 (1999). When, as in the present case, the claim that an individual has brought or maintained an action in bad faith is predicated on the individual's personal knowledge that there is no factual support for the claim or claims at issue, in order to infer that the individual acted in bad faith, the court must make a finding that the individual knew of the absence of that factual basis.

Applying these principles to the present case, we disagree with the Appellate Court's conclusion that the trial court, in its 2015 decision, abused its discretion in awarding attorney's fees to the plaintiff. In arriving at our conclusion, we are mindful that, in applying the abuse of discretion standard, our "review of the trial court's decision is a deferential one. First, we observe that, [w]here the trial court reaches a correct decision but on [alternative] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record. . . . Additionally, [i]t is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award." (Citation omitted; internal quotation marks omitted.) *Berzins* v. *Berzins*, supra, 306 Conn. 661.

In its 2015 decision, the trial court found that the defendant acted in bad faith in taking an appeal in *Lederle II* and that his appellate claims were entirely lacking in color. The court accordingly awarded sanctions against the defendant, as opposed to his attorney. See *Lederle III*, supra, 174 Conn. App. 602. The trial court predicated its ultimate findings on the following subordinate factual findings. As to the defendant's claim on appeal that the trial court improperly held a portion of the hearing on the motion to open in chambers and off the record, the court found that nothing in the record provided support for that claim. The trial court found that the record demonstrated only two instances in which the court conducted any business related to this matter in chambers: first, prior to the start of the hearing to discuss procedural issues with counsel for both parties and, second, to read two decisions as requested by counsel. The court further found that, although the defendant was physically present at all court proceedings, neither he nor his attorney raised any objection on the basis that the court was holding a portion of the hearing in chambers and off the record.

As to the defendant's claim on appeal that the trial court, in its 2013 decision, abused its discretion by ruling on the motion to open—which was predicated on the basis of a claim of fraud—without hearing testimony or taking evidence, the court, in its 2015 decision, predicated its ultimate determination that the claim lacked any indicia of color on two independent findings, either of which on its own would support the court's ultimate finding. First, the court found that the parties agreed to a two part procedure by which the court would first determine whether, but-for the plaintiff's job with Lexmark, the trial court, in its 2007 decision, would not have granted her motion for permission to relocate with the minor child to Virginia. If, and only if, the court answered that question in the affirmative, would it consider whether an evidentiary hearing would be required to resolve the motion to open. The court found that it had explained the proposed bifurcated procedure not only to counsel, but also to both the plaintiff and the defendant.[7] Second, the court found that the transcript of the October 24, 2012 hearing clearly revealed that, in lieu of an evidentiary hearing, the parties agreed to proceed by filing simultaneous briefs with factual stipulations.

The trial court's subordinate findings were sufficiently specific to support its ultimate findings that the defendant acted in bad faith in knowingly bringing appellate claims that were entirely lacking in color.[8] As to the defendant's first appellate claim—that the court conducted part of the hearing in chambers and off the record—the court's findings were sufficiently specific to support the conclusion that the claim was entirely lacking in color. The court found not only that there was no evidence to support the claim, but also found that the record reflected the purpose of the two instances during the hearing when the court retired to chambers. The first instance was prior to the hearing and related to purely procedural matters and the second instance was when the court retired to chambers to read decisions provided to it by counsel. It is difficult to imagine what more *could* be said, once a court has found that no evidence supports the claim and that the only relevant evidence in the record expressly contradicts the claim. The court further found that the defendant was physically present to observe that lack of evidence. That finding establishes the defendant's first-hand knowledge and supports the ultimate finding that the defendant knew that his claim lacked merit and, therefore, acted in bad faith in pursuing the claim on appeal.

As to the defendant's second appellate claim—that the trial court, in its 2013 decision, improperly denied the motion to open without hearing testimony or taking evidence—the court found, in its 2015 decision, that, during the hearing on the motion to open, the parties

had agreed that the court would first resolve the threshold legal issue of materiality and would subsequently hold an evidentiary hearing only if it concluded that the plaintiff's employment with Lexmark was a material fact. Excerpts of the transcripts of the October 24, 2012 hearing on the defendant's motion to open were attached in an appendix to the trial court's 2015 decision. During the October 24, 2012 hearing, after some initial colloquy regarding disputed facts, counsel for both parties proposed that the court decide the motion to open in two steps. As the attorney for the plaintiff explained to the court, they proposed "a methodology [that] perhaps [would result in the court] *not having to sort through these and other important facts . . . .*" (Emphasis added.) The parties had engaged in a series of discussions in an attempt to "boil this down to a nut." As a result of those discussions, they agreed that the defendant could prevail on his motion to open the judgment only if the trial court would not have granted the plaintiff's motion for permission to relocate—and the Appellate Court would not have upheld that ruling—if she had not been employed by Lexmark in Virginia. Accordingly, they both agreed that the court should first resolve the purely legal determination of whether the plaintiff's employment with Lexmark was the "but-for" cause underlying both the trial court's decision granting the plaintiff's motion for permission to relocate and the Appellate Court decision upholding that ruling. The trial court would proceed to the evidentiary phase only if it answered that legal question in the affirmative. The parties therefore requested that, prior to hearing any evidence, the court first review both the 2007 decision rendering final judgment of dissolution and granting permission to the plaintiff to relocate to Virginia and the Appellate Court decision in *Lederle I* that affirmed the judgment of the trial court. See *Lederle I*, supra, 113 Conn. App. 177.

Before the court took a recess to read the two decisions, it clarified in open court, in the presence of both parties and their counsel, its understanding of the agreed upon procedure as requiring the court to "make an initial determination as to whether this is a 'but-for' situation." The court further clarified the parties' agreement that, if the court resolved the motion to open on the threshold issue, "we're done and you can do whatever you want to do with your motions and everything like that." Finally, the trial court made clear to the parties its understanding that, if the court were unable to resolve the motion on the initial legal issue, then "correct me if I'm wrong . . . we would have to schedule a lengthy factual hearing . . . ."

Following the court's review of the decisions of the trial court and the Appellate Court, in its 2013 decision, the court concluded that the plaintiff's employment with Lexmark was not the "but-for" cause of the decision granting the plaintiff permission to relocate. To

the contrary, the court explained, the plaintiff's employment was only one among "numerous reasons" that the 2007 decision had determined that relocation was in the best interest of the minor child. The court quoted from the 2007 decision, which specifically stated that "[n]o single factor has controlled the decision of the court" and that the court had weighed "all the evidence" and considered "all the factors relevant to the child's best interest" in determining to grant the plaintiff permission to relocate. The 2007 decision also noted that, in granting permission to relocate, the court had considered "the body of case law regarding best interest, the specific facts of this case, the testimony and credibility of the various witnesses here, and the court's assessment and evaluation of the best interest of this specific child. The court has considered the recommendations of both the [guardian ad litem] and the family relations counselor of sole custody to the mother and approval of the relocation." On the basis of its review of the Appellate Court's decision in *Lederle I*, the trial court also concluded that the plaintiff's employment with Lexmark was not material to that court's affirmance of the trial court's 2007 decision.[9]

The trial court's findings as to the defendant's second appellate claim are sufficiently specific to support its ultimate findings that the claim lacked any colorability, and that the defendant acted in bad faith by knowingly pursuing a claim entirely lacking in color. The essence of the defendant's claim on appeal in *Lederle II* was that the court improperly decided the motion to open without taking any evidence. As to the colorability of that claim, the trial court found that the parties expressly agreed in open court to the bifurcated procedure by which the court would hear evidence only if it determined that the plaintiff's employment with Lexmark was a fact that was material to both the trial court's 2007 decision and the Appellate Court's decision in *Lederle I*. The trial court also found that it concluded, in its 2013 decision, that the plaintiff's Lexmark employment was not material to either of those decisions. The trial court's resolution of the motion to open, therefore, rested entirely on a legal conclusion and did not require any evidence—which is precisely how the parties had agreed to proceed. Those findings support the trial court's ultimate determination in its 2013 decision that this claim lacked any indicia of color.[10] The court further found that it had clarified in open court, in the presence of the parties and their attorneys, that this procedure was in accordance with the agreement between the parties. The defendant therefore had firsthand knowledge that his appellate claim lacked any indicia of color. That finding supports the court's ultimate finding in its 2013 decision that the defendant acted in bad faith in pursuing this claim on appeal.[11] For the foregoing reasons, we conclude that the Appellate Court incorrectly concluded that the trial court had abused its

discretion in awarding attorney's fees to the plaintiff on the basis of the bad faith exception to the American rule.

Finally, we address the defendant's claim that, even if the trial court did not abuse its discretion in determining that an award was warranted under the bad faith exception to the American rule, the amount of the award was unreasonable and excessive because (1) the plaintiff's success at the Appellate Court in *Lederle II* was not due to the efforts of plaintiff's counsel, and (2) the fees sought by the plaintiff were significantly higher than the fees charged by the defendant's attorney for his work on the appeal. We first set forth the applicable standard of review. "[T]he amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion: A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in case of a clear abuse of discretion by the trier may we interfere. . . . The trier is always in a more advantageous position to evaluate the services of counsel than are we." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 258–59, 828 A.2d 64 (2003).[12]

"It is well established that a trial court calculating a reasonable attorney's fee makes its determination while considering the factors set forth under rule 1.5 (a) of the Rules of Professional Conduct. *Sorrentino* v. *All Seasons Services, Inc.*, [245 Conn. 756, 775, 717 A.2d 150 (1998)] ('[r]ule 1.5 [a] of the Rules of Professional Conduct lists the factors that ordinarily determine the reasonableness of an attorney's fee'); *Andrews* v. *Gorby*, 237 Conn. 12, 24, 675 A.2d 449 (1996) ('[t]ime spent is but one factor in determining the reasonableness of an attorney's fee'). A court utilizing the factors of rule 1.5 (a) considers, inter alia, the time and labor spent by the attorneys, the novelty and complexity of the legal issues, fees customarily charged in the same locality for similar services, the lawyer's experience and ability, relevant time limitations, the magnitude of the case and the results obtained, the nature and length of the lawyer-client relationship, and whether the fee is fixed or contingent." (Footnote omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 259.

The fee hearing took place over the course of four days. The trial court began the hearing on October 30, 2013, but postponed the proceedings until the resolution of the appeal in *Lederle II*. The final three days of the hearing were held in February, 2015, at which time the court heard testimony and took evidence concerning the amount of the plaintiff's attorney's fees. The court heard the testimony of the plaintiff's attorney,

Norman A. Roberts II, who was questioned extensively regarding his fee affidavit as well as the attached, detailed invoices for his firm's services. Roberts claimed that his reasonable fees for the services rendered as a result of the defendant's bad faith claims on appeal amounted to $61,625.90. Included in that total were fees for services rendered by two associate attorneys and a paralegal employed by the firm. Slightly less than one half of the total fees were for services rendered directly by Roberts, who asserted in the fee affidavit that he rendered 60.3 hours of service at a rate of $500 per hour, resulting in fees of $30,150.[13]

The defendant's examination of Roberts and testing of the fee affidavit were thorough. He questioned Roberts concerning the propriety of charging for the services of the paralegal, on the basis that some of those services could be classified as clerical. He also highlighted portions of each of the twenty attached individual invoices, probing the necessity of the time spent on various tasks. For example, with respect to the invoice dated May 31, 2013, the defendant questioned the need to charge for two attorneys, Roberts and an associate, to attend a preargument conference, resulting in a bill for more than ten hours of time. The defendant further questioned Roberts concerning the charges for services rendered in connection with the plaintiff's attempt to recover attorney's fees from the defendant.

The defendant focused particular attention on two issues in his questioning of Roberts. First, he challenged the propriety of the plaintiff's recovering attorney's fees from him for the appeal on the basis that the Appellate Court granted the defendant's motion to strike the portions of the plaintiff's appellate brief that referenced and relied on the October 30, 2013 hearing. In closing argument to the trial court, the defendant contended that, because the Appellate Court rendered judgment in favor of the plaintiff on the basis of theories other than those advanced by Roberts, and because the court granted the defendant's motion to strike portions of the plaintiff's brief, Roberts did not actually "win" the appeal for the plaintiff. Accordingly, the defendant argued, he should not be charged for the time that Roberts spent on the appeal.[14]

Second, the defendant introduced evidence of the fees charged by the defendant's previous appellate counsel, Paul Greenan, which amounted to $9700. The trial court admitted that evidence, over the plaintiff's objection, on the ground that it was relevant to the question of the reasonableness of the plaintiff's fees. The defendant later asked Roberts why his fees were six times higher than his counsel's fees. Roberts explained that the difference was due, in part, to the different rates charged: Roberts' rate is $500 per hour, whereas the defendant's counsel charges $200 per hour.

Roberts also testified that the discrepancy was due, in part, to the conduct of the defendant's counsel, which required Roberts to expend more time on the appeal than he otherwise would have. For example, Roberts testified that the defendant's counsel "would come to court and have other business and [Roberts] was forced to stand there and wait while [the defendant's counsel] attended [to] other business . . . ."

During the course of the fee hearing, the trial court stated its view that it considered the amount that Roberts sought, approximately $61,000, to be "way . . . too much." At one point, the court stated that it "had a hard time figuring out" how it was possible to justify that amount of fees in connection with the present case.

Ultimately, the court awarded the plaintiff approximately one half of what Roberts had claimed, $30,000. Although the court did not specify the particular facts on which it relied, it is evident from the record that, in awarding the plaintiff less than one half of the fees requested, the court considered Roberts' detailed testimony regarding the fee affidavit, the fee affidavit itself, the relative rates charged by Greenan and Roberts, and the challenges raised by the defendant regarding certain charges. A reasonable reading of the transcripts and the fee affidavit supports the conclusion that the trial court discounted all but the fees for the services rendered directly by Roberts himself. On the basis of the foregoing, we conclude that the trial court acted within its discretion in awarding the plaintiff $30,000 in attorney's fees.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's award of attorney's fees.

In this opinion the other justices concurred.

[1] This court granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly apply the abuse of discretion standard of review in holding that the trial court's memorandum of decision lacked 'factual findings with a high degree of specificity' when the trial court found that the defendant's claims on appeal lacked any indicia of color?" *Lederle* v. *Spivey*, 327 Conn. 954, 171 A.3d 1050 (2017).

[2] Pursuant to the American rule, "except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable [attorney's] fee from the loser." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 155, 735 A.2d 333 (1999).

[3] Although the defendant's claim is outside the scope of the certified issue, the plaintiff has had the opportunity to brief that issue. Therefore, in the interests of judicial economy, we address the defendant's claim. We observe, however, that, even if we agreed with the defendant that the trial court abused its discretion in setting the amount of the award, that conclusion would not serve as an alternative ground to affirm the judgment of the Appellate Court, which held that the trial court had abused its discretion in awarding attorney's fees *at all*. Our decision in the present case concludes that the trial court did not abuse its discretion in determining that attorney's fees were warranted under the bad faith exception. The Appellate Court did not reach the issue of whether the trial court had abused its discretion as to the amount of the award.

[4] In his brief to this court, the defendant asserts that he raised a third

claim on appeal in *Lederle II*, contending that, because "a decision on the motion to [open] was made behind closed doors and without a court reporter, the court effectively sealed the hearing from the public in violation of the public's right to access." Rather than a separate claim, the defendant identifies an additional theory in support of his claim that the court improperly held a portion of the hearing in chambers and off the record.

[5] In his brief to this court, the defendant takes issue with the conclusion of the Appellate Court that the plaintiff had no continuing duty to disclose the loss of her Lexmark employment. That issue, however, is not within the scope of the certified question and, therefore, is not before us in the present appeal.

We further note that we find unpersuasive the defendant's argument that, because the Appellate Court sua sponte concluded that there was no continuing duty to disclose, his claim on appeal that the trial court improperly decided the motion to open without taking evidence was a colorable claim. The fact that the Appellate Court resolved the case on a different ground has no bearing on the merits—or the complete lack thereof—of the claim that the defendant raised before that court.

[6] The court in that decision also granted the plaintiff's motion for termination of the stay of proceedings, which she had filed in January, 2015.

[7] We find unpersuasive the defendant's contention that, because the trial court also found that the defendant's attorney was aware of the complete lack of any merit to both of the defendant's appellate claims, the trial court failed to make the requisite finding as to the defendant. The mere fact that the trial court made the additional, irrelevant finding that the defendant's attorney was aware that the defendant's appellate claims were completely lacking in color has no bearing on the fact that the trial court also found that the defendant knew that his claims lacked any indicia of color.

[8] Although we have stated that the findings must have a high degree of specificity; *Berzins* v. *Berzins*, supra, 306 Conn. 662; we have never stated that the trial court must separately indicate which factual findings relate to which prong, colorability or bad faith, and we reject that proposition. Frequently, the subordinate factual findings that support bad faith will also provide support for lack of colorability. Rather than requiring a rigid structure in the trial court's analysis, we merely examine the court's findings to determine whether they are sufficiently specific to support the conclusion that the court did not abuse its discretion in arriving at its ultimate findings of bad faith and lack of colorability.

[9] We note that the 2007 decision *could* reasonably be read to suggest that the plaintiff's employment with Lexmark was material to the court's decision granting relocation. Because the defendant, however, did not challenge the trial court's legal conclusion to the contrary, we need not consider whether the trial court's interpretation of the 2007 decision was correct.

[10] As an alternative ground for affirmance, the defendant contends that there was a colorable basis for the two claims that he raised on appeal in *Lederle I*. As we have discussed, the trial court's subordinate findings are sufficiently specific to support the court's ultimate determination that both of his claims were entirely lacking in color. Accordingly, we need not address the defendant's alternative ground for affirmance. We note, however, that our review of the record confirms the trial court's determination that neither of the defendant's appellate claims had any indicia of color.

[11] As we already have stated in this opinion, the trial court predicated its ultimate finding as to the defendant's appellate claim that the court improperly decided the motion to open without hearing evidence on two, independent bases: the parties' agreement to the bifurcated proceeding and an alleged stipulation of facts entered into by the parties in lieu of an evidentiary hearing. Our conclusion that the trial court's finding that the parties agreed to the bifurcated proceeding—which resulted in the motion to open being resolved under the purely legal question—renders it unnecessary for us to consider the alternative ground for affirmance relied on by the defendant, namely, that the trial court's second subordinate finding in support of its ultimate finding of lack of colorability—that the parties entered into a stipulation of facts—was clearly erroneous.

We observe, however, that our review of the October 24, 2012 transcript suggests, to the contrary, that there was no agreement between the parties in court that they would proceed by way of stipulation in lieu of an evidentiary hearing. Although it was later suggested that the parties had exchanged e-mails in which they agreed that their statements of facts in their briefs would serve as a joint stipulation of facts for purposes of the motion to open, there is no mention during the October 24, 2012 hearing of any stipula-

tion entered into by the parties. In fact, the transcript of the October 24, 2012 hearing suggests that, if the trial court had concluded that the plaintiff's employment with Lexmark was material to the 2007 decision granting her permission to relocate, the court would have proceeded to an evidentiary hearing. The court expressly stated that expectation to the parties, and neither party contradicted the court. Moreover, during the course of the hearing, the parties identified various issues that remained contested, including credibility issues, the date when the plaintiff learned that she no longer had a job with Lexmark, and whether she had left that position voluntarily. Because, however, it is clear from the record that the parties agreed to the bifurcated proceeding, it is immaterial that the record does not support the court's finding that the parties entered into a stipulation of facts.

[12] We reject the defendant's suggestion that we should not accord deference to the trial court's decision because the fees incurred were in connection with proceedings before the Appellate Court. The applicable standard of review is deferential because the trial court has heard the testimony and received evidence regarding the reasonableness of the fees and, accordingly, is in the best position to evaluate the evidence and to make the necessary factual findings. The fact that the proceedings giving rise to the claim for attorney's fees took place on appeal does not change the standard of review.

[13] Our review of the invoices reveals a slight error in the calculation of Roberts' total hours. The invoices show that he devoted a total of 59.5 hours as a result of the defendant's appellate claims.

[14] The defendant claims that the clean hands doctrine bars recovery on this basis. That argument is without merit.

———————————————