******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELGO, J., concurring in part and dissenting in part. This case presents a question of first impression regarding an action for vexatious litigation predicated on a defendant's answer to a civil complaint. I agree with the majority's rejection of the claims of the plaintiff, Tamara Dorfman, regarding her ability to obtain meaningful discovery prior to the rendering of summary judgment and the analysis employed by the trial court on her claims under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq. I disagree in part with the majority's conclusion that the court improperly rendered summary judgment in favor of the defendant, Liberty Mutual Fire Insurance Company, on the vexatious litigation counts of her complaint. I therefore respectfully dissent in that limited regard.

Because the facts giving rise to this appeal are set forth in the majority opinion, I focus my attention on the plaintiff's vexatious litigation claims. As our Supreme Court has explained, "[t]he cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages." *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 553, 944 A.2d 329 (2008). "A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor." *Vandersluis* v. *Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978); see also *Allstate Ins. Co.* v. *Opie*, United States District Court, Docket No. 3:13-CV-01101 (RNC) (D. Conn. December 9, 2014) ("vexatious litigation and malicious prosecution are so similar as to be essentially the same tort").

The archetype of either a common-law or statutory action for vexatious litigation is the existence of a prior lawsuit commenced by the defendant against the plaintiff. See, e.g., *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 553 ("[t]he cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages"); *Rioux* v. *Barry*, 283 Conn. 338, 347, 927 A.2d 304 (2007) ("[v]exatious litigation [generally] requires a plaintiff to establish that . . . the previous lawsuit or action was initiated or procured by the defendant against the plaintiff"); *Christian* v. *Iyer*, 221 Conn. App. 869, 871–72, 303 A.3d 604 (2023) (plaintiffs brought vexatious litigation action against defendant neighbors for instituting prior trespass action against them); *Greene* v. *Keating*, 197 Conn. App. 447, 449–50, 231 A.3d 1178 (2020) (plaintiff brought vexatious litigation action against defendant law firm for instituting prior action against her).

This case does not involve a prior action initiated by the defendant against the plaintiff, but rather one instituted *by the plaintiff against the defendant*. See *Dorfman* v. *Smith*, 342 Conn. 582, 586–87, 271 A.3d 53 (2022). It thus falls outside the archetype of a vexatious litigation action, as the plaintiff here does not claim that she was "wrongly sued"; see *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 553; by the defendant. Instead, the plaintiff's vexatious litigation action is predicated on her contention that the defendant improperly (1) asserted the special defense of contributory negligence and (2) denied certain paragraphs of her complaint in that prior action.[1] I address each in turn.

---

[1] With respect to the paragraphs of the plaintiff's complaint that are at issue in this appeal, the defendant pleaded either that the paragraph is "denied" or that the defendant "is without sufficient information to either admit or deny the allegations, *and, therefore, denies the allegations* and leaves the plaintiff to her proof." (Emphasis added.) As our Supreme Court has explained, "[t]he pleading of no knowledge or information to [the]

I

Connecticut law has recognized that an action for vexatious litigation may lie with respect to special defenses asserted by a defendant in a prior action between the parties.[2] See *Rozbicki* v. *Sconyers*, 198 Conn. App. 767, 783, 234 A.3d 1061 (2020) (summary judgment improperly granted because genuine issue of material fact existed as to whether defendants had probable cause to assert special defenses); *Forsstrom* v. *Smanik*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-12-6005759-S (June 10, 2013) (56 Conn. L. Rptr. 248, 250) (denying motion to strike because vexatious litigation count of complaint sufficiently alleged that defendant played material role in assertion of "vexatious defenses" without probable cause). In the prior action at issue here, the defendant, in its May 17, 2016 answer and special defenses, alleged contributory negligence as a special defense in response to the plaintiff's amended complaint, which she filed on December 22, 2015. For that reason, I agree with the majority that it was not improper for the plaintiff to commence a vexatious litigation action predicated on the defendant's assertion of that special defense.

In moving for summary judgment, the defendant bore the burden of demonstrating the absence of a genuine issue of material fact on the question of whether it possessed probable cause to assert that special defense. See *Windsor* v. *Loureiro Engineering Associates*, 181 Conn. App. 356, 369–71, 186 A.3d 729 (2018) (defendant who moves for summary judgment on special defense bears initial burden of proof); *Trotter* v. *Anderson*, 417

---

allegations is in effect a denial." *Postemski* v. *Watrous*, 151 Conn. 183, 185, 195 A.2d 425 (1963).

[2] Under our common law and rules of practice, special defenses must be affirmatively pleaded by a party. See *Coughlin* v. *Anderson*, 270 Conn. 487, 501, 853 A.2d 460 (2004); see also Practice Book § 10-50.

F.2d 1191, 1192 (7th Cir. 1969) (defendant seeking summary judgment on special defense of contributory negligence has "heavy burden" in establishing absence of genuine factual dispute). As this court has noted, "[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man [or woman] in the belief that he [or she] has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he [or she] lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted. . . . [T]he existence of probable cause is an absolute protection against an action for [vexatious litigation], and what facts, and whether particular facts, constitute probable cause is always a question of law. . . . [T]he standard is an objective one that is necessarily dependent on what the [party] knew when [it asserted the special defense]." (Citation omitted; internal quotation marks omitted.) *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 774–75.

Because the defendant failed to adduce evidence in support of its motion for summary judgment that would support a good faith belief that the plaintiff was negligent in any manner, I would conclude that the court improperly rendered summary judgment in favor of the defendant with respect to the special defense of contributory negligence.[3] I therefore concur with the majority opinion in this respect.

---

[3] I also find it noteworthy that only seven months after it asserted that special defense—and more than twenty-one months *before* trial commenced—the defendant withdrew that defense. Accordingly, the relevant time period for purposes of evaluating the plaintiff's vexatious litigation claim is that seven month window in which the defendant maintained the special defense of contributory negligence.

## II

The plaintiff's vexatious litigation counts also are predicated on the defendant's denial of certain paragraphs of her complaint in the prior action between the parties.[4] For two distinct reasons, I would conclude that the court properly rendered summary judgment with respect to those general denials.

## A

First, I do not believe that the plaintiff has met her burden of establishing that the scope of an action for vexatious litigation encompasses general denials pleaded by a defendant in response to a civil complaint in a prior action. In that regard, it bears emphasis that, in every appeal before this court, "the burden rests with the appellant to demonstrate reversible error." *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 145, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014); see also *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 7, 513 A.2d 1218 (1986) ("[t]he burden is on the appellant to prove harmful error"); *Harlow* v. *Stickels*, 151 Conn. App. 204, 210, 94 A.3d 706 (2014) ("[a]n appellant bears the burden to show that there was error from which she appeals"). I am aware of no Connecticut

In its appellate brief, the defendant avers that, "[a]t no time prior to the withdrawal of the special defense of contributory negligence on December 15, 2016, did the plaintiff take any depositions or disclose any experts as to liability for the subject accident." Although that allegation has no bearing on the issue of probable cause before this court, it may be relevant to the merits of the plaintiff's vexatious litigation claim on remand. Also relevant is the fact that, on August 10, 2016, the plaintiff filed a request for the defendant to revise its contributory negligence special defense, arguing that certain allegations did "not set forth any facts" and that the plaintiff was "entitled to know the facts upon which [the defendant's] assertion is based."

[4] It is well established that an appellate court may "take judicial notice of the court files in another suit between the parties, especially when the relevance of that litigation was expressly made an issue at this trial." *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990).

authority, nor has the plaintiff identified any, that authorizes a plaintiff to maintain a vexatious litigation action on the basis of general denials pleaded by a defendant in response to a negligence claim in a prior action.[5] To resolve that question of first impression in this state, I respectfully submit that the appropriate analytical approach begins within the confines of Connecticut law.[6]

---

[5] Although the plaintiff's complaint in the prior action alleged a breach of contract on the part of the defendant, that count was premised on the purported negligence of the tortfeasor, Joscelyn M. Smith, in whose shoes the defendant stood as a party to that action. See *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 732–34, 778 A.2d 899 (2001) (plaintiff's uninsured motorist insurance carrier acts as surrogate for uninsured tortfeasor and stands in shoes of tortfeasor); *Anderson* v. *Peerless Ins. Co.*, Superior Court, judicial district of Middlesex, Docket No. 66861 (February 3, 1993) (8 Conn. L. Rptr. 728, 730) ("the same defenses that the uninsured [tortfeasor] had are also legitimate defenses for the carrier to invoke"). To prevail in her underinsured motorist action against the defendant, the plaintiff was required to establish negligence on the part of Smith. See *Collins* v. *Colonial Penn Ins. Co.*, supra, 741 ("[w]ithout proof of the negligence of a tortfeasor . . . there can never be a recovery of uninsured motorist benefits"); cf. *Enviro Express*, *Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 204, 901 A.2d 666 (2006) ("[U]nderinsured motorist payments are not purely contractual in nature because such payments operate in part as a liability insurance surrogate for the underinsured motorist third party tortfeasor. . . . [U]nderinsured motorist benefits are sui generis. They are contractual, but they depend on principles of tort liability and damages." (Internal quotation marks omitted.)); *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 26 n.9, 699 A.2d 964 (1997) (rejecting claim "that underinsured motorist payments are purely contractual in nature" and emphasizing that "underinsured motorist payments are . . . exclusively premised upon a third party's *tort liability*" (emphasis altered)); *Miller* v. *State Farm Mutual Automobile Ins. Co.*, 993 A.2d 1049, 1055 (Del. 2010) ("the determination of the insured's damages in an underinsured motorist claim is governed not by contract principles, but by tort law"). For that reason, the trial court correctly observed that "[t]he essential characteristic of [the plaintiff's] underlying underinsured motorist claim is that of an action in negligence."

[6] The majority's analysis centers on a "determination of whether Connecticut follows" § 674 of the Restatement (Second) of Torts. For two reasons, I respectfully disagree with that approach. First, on an elemental level, it is axiomatic that such secondary sources are not binding on the courts of this state and properly are used to inform our discussion of a matter of state law, rather than drive it—particularly when statutory interpretation is at issue. See, e.g., *Stamford Property Holdings*, *LLC* v. *Jashari*, 218 Conn.

"In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute." *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 554. "A statutory action for vexatious litigation under General Statutes § 52-568 . . . differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Citation omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007); see also *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 596, 715 A.2d 807 (1998) ("[t]he elements of a common-law or statutory cause of action for vexatious litigation are identical"). Because the plaintiff in this case alleged both common-law and statutory vexatious

App. 179, 198 n.12, 291 A.3d 117 (Restatement "is nonbinding secondary authority"), cert. denied, 347 Conn. 901, 296 A.3d 840 (2023); *Matter of Featherfall Restoration, LLC*, 261 Md. App. 105, 137–38, 311 A.3d 437 (Restatement "is merely a secondary source providing a survey of trends in common law on a national scale"), cert. granted, 487 Md. 264, 317 A.3d 913 (2024); *Gerling Konzern Allgemeine Versicherungs AG* v. *Lawson*, 472 Mich. 44, 57, 693 N.W.2d 149 (2005) ("the duty of this [c]ourt is to construe the language of Michigan's statutes before turning to secondary sources such as the Restatements").

Second, the question of whether Connecticut has adopted § 674 of the Restatement (Second) of Torts was never raised by any party, before either the trial court or this court. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014) ("[o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial" (internal quotation marks omitted)). Although this court ordered the parties to file simultaneous supplemental briefs following oral argument in this appeal, we likewise did not raise that issue. While the plaintiff does cite to § 674 in one paragraph of her supplemental brief, she does not contend that Connecticut has adopted that Restatement provision. Perhaps most importantly, the defendant in this case had no notice of that issue and was never provided an opportunity to be heard thereon, in contravention of the mandate of our Supreme Court in *Blumberg Associates Worldwide, Inc.* See id., 128. Respectfully, I disagree with the majority that an isolated reference to § 674 in one paragraph of the plaintiff's supplemental brief before this court—to which the defendant had no opportunity to reply—properly "put the defendant on notice" that the issue of whether Connecticut follows § 674 was being raised in this appeal.

litigation, which actions are largely identical, I begin with the question of whether § 52-568 permits a party to maintain such an action on the basis of general denials pleaded by a defendant in its answer to a complaint.

1

### Statutory Vexatious Litigation

Whether the legislature intended § 52-568 to encompass a defendant's general denials to paragraphs of a plaintiff's complaint in a prior action presents a question of statutory interpretation, over which our review is plenary. See, e.g., *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 827, 251 A.3d 56 (2020). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Vitti* v. *Milford*, 336 Conn. 654, 660, 249 A.3d 726 (2020).

Section 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others,

or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." By its plain language, that statute applies to two classes of persons—those who commence and prosecute a civil action, and those who assert a defense thereto. The dispute in this case concerns the latter class.

Section 52-568 does not define the term "defense" and provides little clarity as to precisely what constitutes the assertion of a defense in a civil action. Broadly speaking, the term "defense" plausibly may be read to include both general denials and special defenses affirmatively pleaded by a defendant. See, e.g., *JPMorgan Chase Bank, National Assn.* v. *Malick*, 347 Conn. 155, 169, 296 A.3d 157 (2023) (noting that Black's Law Dictionary "defines 'defense' as '[a] defendant's stated reason why the plaintiff or prosecutor has no valid case . . . a defendant's answer, denial, or plea' ").

At the same time, General Statutes § 1-1 (a) requires us to construe statutory language in light of any peculiar or technical meaning it possesses in the law.[7] In this regard, I note that the amendment that added the phrase "asserts a defense" to § 52-568 was enacted as part of the Tort Reform Act of 1986. See Public Acts 1986, No. 86-338, § 9 (P.A. 86-338). In ascertaining the apparent intent of the legislature in adding that language as part of its comprehensive tort reform, we must presume that the legislature was familiar with civil practice in this state and the fact that general denials are commonplace,

[7] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

consistent with our common law and rules of practice.[8] See, e.g., *Daley* v. *Kashmanian*, 344 Conn. 464, 485, 280 A.3d 68 (2022) ("we presume that the legislature is aware of the common law on a particular subject"); *State* v. *Miranda*, 260 Conn. 93, 131–32, 794 A.2d 506 (noting "the presumption that the legislature is aware of the existence of the rules of practice . . . and intended to create a consistent body of law" (internal quotation marks omitted)), cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). The legislature nevertheless did not include the term "denial" in enacting or amending § 52-568. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . ." (Citations omitted.) *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). Had the legislature intended to include general denials within the ambit of § 52-568, it could have defined the term "defense." Alternatively, the legislature simply could have added two words to the statute, so as to read "[a]ny person who . . . asserts a *denial or* defense to any civil action or complaint commenced and prosecuted by another . . . ." The legislature here did neither. See *Branford* v. *Santa Barbara*, 294 Conn. 803, 813, 988 A.2d 221 (2010) ("[w]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained" (internal quotation marks omitted)).

I am also mindful that "[l]egal terms . . . are to be presumed to be used in their legal sense. . . . *In ascertaining legislative intent* [*r*]*ather than using terms*

---

[8] As our Supreme Court explained, "[i]t has long been understood that Practice Book provisions are not intended to enlarge or abrogate substantive rights. . . . [T]his court has interpreted provisions of the Practice Book through the lens of the common law." (Citations omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 44, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009).

*in their everyday sense,* [*t*]*he law uses familiar legal expressions in their familiar legal sense.*" (Emphasis in original; internal quotation marks omitted.) *Rutter* v. *Janis*, 334 Conn. 722, 730–31, 224 A.3d 525 (2020). On multiple occasions, our Supreme Court has distinguished denials from defenses and counterclaims asserted by a party in response to a complaint. See, e.g., *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 760, 104 A.3d 713 (2014) (explaining that General Statutes § 49-42 (a) "permits the court to award attorney's fees if it appears that any *claim, denial, or defense* is without substantial basis in fact or law" (emphasis added)); *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 162, 788 A.2d 1158 (2002) ("[t]he word 'pleading' is defined as '[a] formal document in which a party to a legal proceeding . . . sets forth or responds to allegations, claims, *denials, or defenses*' " (emphasis altered)).

I respectfully submit that the most familiar legal sense of the phrase "asserts a defense," as used by legal practitioners in this state in the context of responding to a complaint, refers to defenses that are affirmatively pleaded, rather than general denials set forth in a defendant's answer. In my years in practice and on the bench, not once have I heard an attorney state that they were "asserting a denial" to the allegations of a complaint—they simply "denied" those allegations. By contrast, attorneys routinely "assert" special defenses and counterclaims—that vernacular is commonplace. See, e.g., *Dorfman* v. *Smith*, supra, 342 Conn. 587 (noting that defendant, in answering complaint, "denied" certain allegations and "also asserted a special defense"); *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 157, 2 A.3d 873 (2010) ("[t]he defendant responded by filing an answer and asserting numerous special defenses"); *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 220, 990 A.2d 326 (2010) ("[t]he defendants filed

an answer denying the plaintiffs' allegations, as well as special defenses asserting that the plaintiffs' claims were barred"); *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 778, 967 A.2d 1 (2009) (defendant "filed an answer asserting numerous special defenses" and counterclaims); *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 788, 807 A.2d 467 (2002) ("In response [to the complaint], the plaintiff filed an answer denying each of the defendants' claims. The plaintiff also filed thirteen special defenses asserting, inter alia, that the policy did not cover the defendants' loss because the defendants either expected or intended the loss."); *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 301, 780 A.2d 916 (2001) ("[t]he defendant denied liability, asserting no special defenses"); *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 314, 659 A.2d 1166 (1995) (defendants "answered [the] complaint by denying liability and asserting identical special defenses and counterclaims").

In addition, I am sensitive to our obligation to "construe a statute *as a whole* . . . ." (Emphasis in original; internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 403–404, 999 A.2d 682 (2010); see also *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 155 (courts engaging in statutory interpretation must be "faithful to the language of the act as a whole"). Significantly, § 52-568 is a punitive statute that exposes the specified classes of persons to both double and treble damages. See *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 536, 839 A.2d 1250 (2004) ("[a]n award of multiple damages . . . is an extraordinary remedy"); *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 41 n.44, 664 A.2d 719 (1995) ("[t]reble damages are punitive damages"); see also *Kearney & Trecker Corp.* v. *Cincinnati Milacron, Inc.*, 562 F.2d 365, 373 (6th Cir. 1977) (describing treble damages as "extreme" sanction). In

light of the gravity of those sanctions, I believe it is plausible that the legislature, in adding the phrase "asserts a defense to any civil action or complaint" to § 52-568, was referring to defenses that must be affirmatively pleaded and counterclaims, rather than general denials pleaded by a defendant in its answer.

Under our rules of statutory construction, ambiguity arises whenever statutory language is subject to more than one plausible interpretation. See, e.g., *Redding* v. *Georgetown Land Development Co., LLC*, 337 Conn. 75, 84 n.9, 251 A.3d 980 (2020) ("[o]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation" (internal quotation marks omitted)); *State* v. *Pond*, 315 Conn. 451, 468, 108 A.3d 1083 (2015) ("[b]ecause the statutory language is subject to multiple, plausible interpretations, and it does not expressly address or resolve the certified question, [the language] is facially ambiguous"); *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 68, 52 A.3d 636 (2012) ("[b]ecause we believe that both of these interpretations are plausible, we conclude that the language [in question] is ambiguous"). In this case, I would conclude that the phrase "asserts a defense" is subject to more than one plausible interpretation. For that reason, § 52-568 is ambiguous, warranting resort to extratextual materials. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 17, 981 A.2d 427 (2009).

a

Legislative History

To resolve statutory ambiguity, it is appropriate to consider the circumstances surrounding the enactment of a statute or statutory amendment. See, e.g., *State* v. *Pond*, supra, 315 Conn. 471. Public Act 86-338, § 9, which amended § 52-568 to add the "asserts a defense"

language in question, was enacted as part of a comprehensive tort reform in 1986. As our Supreme Court has observed, "[t]he Tort Reform Act was drafted in response to rapidly rising insurance rates, which, some believed, would be curtailed if tort liability could be limited and systematized. . . . As finally enacted, the act represents a complex web of interdependent concessions and bargains struck by hostile interest groups and individuals of opposing philosophical positions." (Footnote omitted.) *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 185, 592 A.2d 912 (1991); see also *White* v. *Byelas Irrevocable Trust*, 64 Conn. App. 506, 510–11, 780 A.2d 989 (2001) ("[i]n 1986, by enacting [P.A. 86-338] . . . the General Assembly replaced the common-law rule of joint and several liability with a system of apportioned liability that holds each defendant liable for only his or her proportionate share of damages" (internal quotation marks omitted)).

The legislative history of P.A. 86-338 reflects that the amendment of § 52-568 was an ancillary part of that reform that garnered relatively little discussion among legislators. Proponents of the changes to § 52-568 emphasized that "the number of suits, both serious and frivolous, [has] increased over the last several years." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1986 Sess., p. 312, statement of Harry P. Harris on behalf of Southwestern Area Commerce & Industry Association; see also id., p. 315, statement of Kathleen A. Leary, Vice President of the Business/Industry Council (noting that "[a]lso on the rise is the number of frivolous lawsuits being filed").

The primary change to § 52-568 as a result of P.A. 86-338 was the imposition of an additional penalty. The statute previously provided for an award of treble damages for any person who commenced a civil action (1) without probable cause and (2) with a malicious intent. See General Statutes (Rev. to 1985) § 52-568. Public

Act 86-338 retained that penalty but added a provision imposing double damages on any person who commences a civil action without probable cause, *irrespective* of the question of malice. As Representative William L. Wollenberg, Chairman of the Judiciary Committee, explained when introducing the bill, "[Public Act 86-338] sets out . . . two standards, as opposed to what we have in [§ 52-568] today. If the action is brought without probable cause [there are] double damages, if the action is brought without probable cause and with malicious intent . . . there are treble damages. [That latter standard] is the law today. [Public Act 86-338] adds the double damages." 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5739; see also 29 H.R. Proc., Pt. 22, 1986 Sess., pp. 8105–106, remarks of Representative Michael D. Rybak (noting that lack of probable cause is all that is required for award of double damages and remarking, "God help the poor lawyer who doesn't read that section" of P.A. 86-338); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 7, 1986 Sess., p. 2220 (statement from Connecticut Association of Realtors, Inc., expressing support for "the stronger penalties provided for filing frivolous or vexatious suits"); id., p. 2340 (letter from Connecticut Society of Architects expressing support for "increasing sanctions against any person who commences and prosecutes any civil action or complaint against another without 'probable cause' "); id., p. 2377, statement of Raphael L. Podolsky, Acting Director of the Center for Advocacy and Research, Inc. (opposing amendment because P.A. 86-338 "imposes double damages for a suit brought without probable cause, even though the suit is brought in good faith" and noting that "one person's lack of probable cause is another person's creative legal theory" (emphasis omitted)).

Although the legislative history contains a handful of references to parties that vexatiously defend a civil

action, none pertains to the answering of a complaint. For example, at the hearing before the Judiciary Committee, Robert Hunter, President of the National Insurance Consumer Organization, testified that there should be penalties for both frivolous lawsuits and frivolous defenses, noting that "[l]awyers are known to paper and run the clock." Id., p. 2003. At that point, Representative Christopher Shays asked him to explain what he meant by a frivolous defense, to which Hunter replied: "Frivolous defense is, for example, I was told by an attorney that he took fifty depositions in a case. . . . He said many of those depositions were almost the identical evidence. He was running his clock. We know that attorneys do that, don't we? Including defense attorneys? But to deal with only one side of the equation, to unbalance a system that has grown over 200 years, I think is unfair." Id.; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1986 Sess., p. 1893, testimony of Attorney Ralph Elliot, President of the Connecticut Bar Association (opining that there should be penalty for defendants who say, "I'm going to drag you through three or four years of litigation and then on the courthouse steps, I'll settle with you"); id., p. 1875, testimony of Henry J. Naruk, Vice President and Associate General Counsel of Travelers Insurance Company (stating that "[w]e have brought a number of sanctions against people who have brought frivolous lawsuits, who have extended [lawsuits] and failed to comply with discovery orders").

The legislative history thus suggests that the General Assembly, in enacting P.A. 86-338, was animated by some of the same considerations that underlie § 674 of the Restatement (Second) of Torts, which imposes liability on parties that wrongfully prolong a civil proceeding without probable cause.[9] See 3 Restatement

---

[9] Section 674 of the Restatement (Second) of Torts provides: "One who takes an active part in the initiation, *continuation* or procurement of civil proceedings against another is subject to liability to the other for wrongful

(Second), Torts § 674, p. 452 (1977). Yet there is no indication in the Restatement (Second) that § 674 contemplates the scenario presented here, in which a vexatious litigation action was brought against a defendant for pleading general denials in its answer. As the Supreme Court of Kansas has observed, "[n]one of the examples in the comments to § 674 involve liability attaching to one who defends in an action *without* asserting a counterclaim or cross-claim." (Emphasis added.) *Wilkinson* v. *Shoney's, Inc.*, 269 Kan. 194, 206, 4 P.3d 1149 (2000). In the more than 1100 pages of legislative history of P.A. 86-338, there similarly is no mention whatsoever of a defendant's answer to a complaint or a defendant's denial of an allegation set forth therein. The legislative history thus is silent on the specific issue presented in this appeal, which is whether the legislature intended § 52-568 to encompass general denials pleaded by a defendant in response to a civil complaint.[10]

civil proceedings if (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought." (Emphasis added.) 3 Restatement (Second), Torts § 674, p. 452 (1977). To be clear, I agree with the proposition that an action for vexatious litigation should lie against a party that purposely engages in conduct intended to needlessly foster protracted litigation without probable cause. I disagree that a defendant's filing of a general denial to a paragraph of a plaintiff's complaint should qualify as conduct exposing the defendant to an action for vexatious litigation.

[10] The legislative history also suggests that the wording of P.A. 86-338 was modeled on a similar Wisconsin statute. In a February 26, 1986 letter to the Judiciary Committee, Judy A. C. Edwards, Executive Vice President of the Connecticut Society of Architects, opined that "courts are being used in a way which generates unnecessary litigation and burdens innocent parties with proving that they should not have been sued in the first place." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1986 Sess., p. 295. She continued: "The Wisconsin statute, which is enclosed, follows an example of legislation encouraging courts to award costs and attorney['s] fees to the successful party when an action or a defense is found to have been brought frivolously." Id. A copy of that statute—Wis. Stat. § 814.025 (1977)—was admitted into the record of the Judiciary Committee's hearing. Like § 52-

b

Canons of Construction

I therefore turn my attention to certain well established canons of construction to divine the proper meaning of § 52-568. See *Spadoro* v. *United States Customs & Border Protection*, 978 F.3d 34, 47 (2d Cir. 2020) ("we rely upon canons of construction only if the language of the statute is ambiguous"); *Stratford* v. *Jacobelli*, 317 Conn. 863, 875, 120 A.3d 500 (2015) (canons of construction are utilized to discern legislative intent when statutory language "is not clear and unambiguous").

Section 52-568 patently is a punitive statute that exposes parties, and potentially legal counsel, to double and treble damages. See, e.g., *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S. Ct. 2061, 68 L. Ed. 2d 500 (1981) ("[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct"); *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 235 Conn. 41 n.44 ("[t]reble damages are punitive damages"); *Osborne* v. *Warren*, 44 Conn. 357, 359 (1877) (statutory award of double damages reflects legislative intent "to punish"); see also *Allstate New Jersey Ins. Co.* v. *Lajara*, 222 N.J. 129, 144–45, 117 A.3d 1221 (2015) ("[t]reble damages are intended to punish, and only partly to compensate, and therefore have the classic features of punitive damages"). The legislative history of § 52-568 likewise indicates that it is intended to penalize the persons specified

568, Wis. Stat. § 814.025 distinguishes two classes of litigants subject thereto and provides in relevant part: "If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense, or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs . . . and reasonable attorney fees . . . ." Id., p. 298. That Wisconsin statute was repealed in 2005.

therein. See, e.g., Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1986 Sess., p. 217, statement of Dr. Leonard Kemler (urging legislature to amend § 52-568 to "create sanctions for filing frivolous suits"); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1986 Sess., p. 1908, statement of Attorney Theodore Racklin (noting that § 52-568, as amended by P.A. 86-338, "provides penalties for bringing an action without probable cause"); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 7, 1986 Sess., p. 2220 (statement from Connecticut Association of Realtors, Inc., expressing support for "the stronger penalties provided for filing frivolous or vexatious suits" in § 52-568); id., p. 2340 (letter from Judy A. C. Edwards, Executive Vice President of the Connecticut Society of Architects, urging legislature to increase "sanctions against any person who commences and prosecutes any civil action or complaint against another without 'probable cause' ").

Because § 52-568 is punitive in nature, "we are required to construe it with reasonable strictness in determining whether the act complained of comes within the description in the statute of the acts for which the person in fault is made liable." (Internal quotation marks omitted.) *Branford* v. *Santa Barbara*, supra, 294 Conn. 814; see also *State* v. *Ledbetter*, 240 Conn. 317, 330, 692 A.2d 713 (1997) ("[b]ecause it is a punitive statute, the generally recognized rules of statutory construction normally . . . require the strictest of interpretations"); *Commissioner of Administrative Services* v. *Gerace*, 40 Conn. App. 829, 834, 673 A.2d 1172 (1996) ("the punitive nature of the action against the defendant requires a strict interpretation of the statute" (footnote omitted)), appeal dismissed, 239 Conn. 791, 686 A.2d 993 (1997); see also 3 S. Singer, Sutherland, Statutes and Statutory Construction (8th Ed. 2020) § 59.3, p. 181 (same). The precedent of our Supreme Court further instructs that, when a punitive statute is

ambiguous, "we must interpret it in favor of the party who would be subject to the punitive consequences of the statute rather than in favor of the party who would benefit from those consequences." *Branford* v. *Santa Barbara*, supra, 814–15. Those maxims militate against a conclusion that the legislature intended § 52-568 to encompass a defendant's general denials to the allegations of a complaint.

Furthermore, it is well established that "[i]nterpreting a statute . . . to change radically existing law is appropriate only if the language of the legislature plainly and unambiguously reflects such an intent." (Internal quotation marks omitted.) *Adesokan* v. *Bloomfield*, 347 Conn. 416, 444, 297 A.3d 983 (2023). The plaintiff has provided this court with no Connecticut authority, nor has my research uncovered any, in which a party to a civil action in this state has been found to violate § 52-568 due to the filing of general denials in an answer. I respectfully submit that to expand that statutory cause of action to encompass such general denials constitutes a radical change in our law.

I also am guided by the precept that this court is obligated to "construe a statute as written. . . . Courts may not by construction supply omissions . . . . The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute. . . . That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006); see also *Lucarelli* v. *State*, 16 Conn. App. 65, 70, 546 A.2d 940 (1988) ("[c]ourts must interpret statutes as they are written . . . and cannot, by judicial construction, read into them provisions which are not clearly stated" (citation omitted)). To the extent that the plaintiff asks this court to expand the statutory cause of action for vexatious litigation to

encompass a defendant's general denials to a complaint—which, at its essence, involves a judgment call on a matter of public policy—that request properly is the prerogative of our General Assembly. See *Commissioner of Environmental Protection* v. *State Five Industrial Park, Inc.*, 304 Conn. 128, 160 n.5, 37 A.3d 724 (2012) (it is "the prerogative of the legislature, rather than the courts, to amend the statutory scheme"); *State* v. *Reynolds*, 264 Conn. 1, 79, 836 A.2d 224 (2003) (Connecticut courts cannot exceed "[their] constitutional limitations by infringing on the prerogative of the legislature to set public policy through its statutory enactments"), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]n areas where the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature").

c

In light of the foregoing, I would conclude that the plaintiff has not satisfied her burden of demonstrating, as a matter of law, that § 52-568 encompasses a defendant's general denials to a plaintiff's complaint in a prior action. For that reason, I believe that summary judgment was properly rendered in favor of the defendant with respect thereto.

2

Common-Law Vexatious Litigation

The question of whether a common-law vexatious litigation action may be predicated on a defendant's general denials to a complaint in a prior action is one of first impression in this state.[11] Appellate review of

---

[11] In her supplemental brief to this court, the plaintiff posits that, in *Dorfman* v. *Smith*, supra, 342 Conn. 582, our Supreme Court "indicated that a vexatious litigation claim can be premised on [the defendant's] answers" in the prior action between the parties. I disagree. The statements referenced by the plaintiff arose in the context of the court's discussion of whether

that question of law is plenary. See *State* v. *Campbell*, 328 Conn. 444, 477 n.11, 180 A.3d 882 (2018).

a

In urging this court to expand the common-law action for vexatious litigation, the plaintiff relies in part on § 674 of the Restatement (Second) of Torts, which imposes tort liability on a party who "takes an active part in the initiation, continuation or procurement of civil proceedings" without probable cause. See 3 Restatement (Second), supra, § 674, p. 452; see also footnote 9 of this opinion. There is no doubt that a party can improperly continue a civil proceeding, such as by taking numerous redundant depositions or filing frivolous motions, thereby needlessly prolonging litigation for years.[12] In my view, such conduct is what is

the trial court properly had applied the litigation privilege to a claim for breach of the implied covenant of good faith and fair dealing. See id., 596–612. During that discussion, the court stated that, "*even if* the allegations in the complaint are sufficient to support a claim for vexatious litigation or abuse of process but such claims are not raised, these allegations do not remove immunity from a claim that falls within the scope of the litigation privilege." (Emphasis added.) Id., 597. The court later noted: "[P]arties and their counsel who abuse the process by bringing unfounded actions for personal motives are subject to civil liability for vexatious suit or abuse of process. . . . Importantly, in the present case, upon a prior action terminating in her favor, the plaintiff could have brought a lawsuit for vexatious litigation." (Citation omitted; internal quotation marks omitted.) Id., 612. At the same time, the court emphasized that "[t]he fact that the plaintiff alleged facts that *may have been sufficient* to support a claim for vexatious litigation does not prevent the litigation privilege from applying to the claim alleged." (Emphasis added.) Id., 607.

"It is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal." *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582 n.10, 930 A.2d 739, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007). The issue of whether, as a matter of law, a statutory or common-law action for vexatious litigation may be predicated on a defendant's general denials to a complaint in a prior action was neither presented to nor decided by our Supreme Court in *Dorfman* v. *Smith*, supra, 342 Conn. 582. The plaintiff's reliance on that case, therefore, is misplaced.

[12] As the Supreme Court of California noted one-half century ago, "[t]he judicial process is adversely affected by a maliciously prosecuted cause not

contemplated by § 674 when it refers to the improper "continuation" of a civil proceeding. At the same time, neither § 674 nor any of the commentary to that section pertains to a defendant's conduct in filing an answer to a civil complaint. For that reason, I respectfully disagree with the majority that § 674 applies to a defendant's general denials to a complaint in a prior action. Instead, I would join the overwhelming majority of jurisdictions that have rejected similar claims.

Numerous courts have been confronted with claims alleging "malicious defense" on the part of a defendant. As the United States District Court for the District of Delaware observed: "A claim for malicious defense is the mirror image of a claim for malicious prosecution. As its name implies, the claim arises when a defendant adopts unfair or unreasonable litigation tactics in an effort to prejudice or harass an opponent." *Rowlands* v. *Phico Ins. Co.*, United States District Court, Docket Nos. Civ.A.00-477-(GMS) and Civ.A.00-485-(GMS) (D. Del. July 27, 2000). For example, in *Wilkinson* v. *Shoney's, Inc.*, supra, 269 Kan. 194, the plaintiff sought to prevail on a malicious defense claim, relying specifically "on the 'continuation or procurement of civil proceedings against another' wording of Restatement (Second) of Torts § 674 . . . ." Id., 204. In rejecting that claim, the court noted that "[n]one of the examples in the comments to § 674 involve liability attaching to one who defends in an action without asserting a counterclaim or cross-claim. Some authorities have recognized an action for malicious prosecution based on the filing of a cross-complaint or counterclaim by [the] defendant on the theory that such cross-pleadings institute a separate and independent cause of action and potentially

only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals . . . as instruments with which to maliciously injure their fellow men." (Internal quotation marks omitted.) *Bertero* v. *National General Corp.*, 13 Cal. 3d 43, 51, 529 P.2d 608, 118 Cal. Rptr. 184 (1974) (en banc).

subject the cross-defendant to the same potential liability and injury as any other claim brought in the first instance. . . . Most courts, however, have found that a purely defensive action provides an insufficient basis for liability." (Citation omitted.) Id., 206–207. The court further emphasized that other remedies were available to the plaintiff, including requests for admission, court-ordered sanctions, and monetary penalties for defendants "who submit a false statement or representation knowing it to be false." Id., 205. Given the existence of those remedies, the court concluded that "there is no public policy justification to create a cause of action for malicious defense . . . ." Id. Moreover, the court emphasized that, "[i]f such [an action] is deemed desirable or needed, action by the legislature is required." Id., 208.

California courts repeatedly have resisted attempts to impose liability on defendants who maliciously defend a civil action. See *Bertero* v. *National General Corp.*, 13 Cal. 3d 43, 52, 529 P.2d 608, 118 Cal. Rptr. 184 (1974) (en banc) (declining to recognize tort of malicious defense and reaffirming "the right of a defendant, involuntarily haled into court, to conduct a vigorous defense"); *California Physicians' Service* v. *Superior Court*, 9 Cal. App. 4th 1321, 1325, 12 Cal. Rptr. 2d 95 (1992) ("[b]roadly but nevertheless accurately speaking, there is no tort of 'malicious defense' "); *DuBarry International, Inc.* v. *Southwest Forest Industries, Inc.*, 231 Cal. App. 3d 552, 575, 282 Cal. Rptr. 181 (1991) (opining, in section of opinion titled "A Denial of an Agreement in a Pleading Can Not Serve as a Basis for Tort Liability," that "to permit a plaintiff to impose tort liability upon a defendant for positions asserted in pleadings not only imposes an unfair burden on the conduct of a defense but conflicts with the well accepted rule which permits the assertion of two or more inconsistent pleas").

As the Supreme Court of California noted more than one century ago regarding liability of a defendant who "makes a groundless defense" in a prior action, proponents of a malicious defense action fail "to distinguish between the position of the parties, plaintiff and defendant, in an action at law. The plaintiff sets the law in motion; if he does so groundlessly and maliciously, he is the cause of the defendant's damage. But the defendant stands only on his legal rights—the plaintiff having taken his case to court, the defendant has the privilege of calling upon him to prove it to the satisfaction of the judge or jury, and he is guilty of no wrong in exercising this privilege." (Internal quotation marks omitted.) *Eastin* v. *Bank of Stockton*, 66 Cal. 123, 127, 4 P. 1106 (1884).

The high courts of other states agree with that proposition. As the Supreme Court of Illinois explained: "The defendant had the right to resist [the plaintiffs'] claim and if [the] plaintiffs wished to establish their right it was necessary for them to resort to litigation. If, in the process of the procedure necessary to the establishment of [the] plaintiffs' claim, they were compelled to employ the services of lawyers and incur other expenses it was but an incident attached to the asserting and enforcement of their right . . . . If the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action against the defendant for his attorney fees and expenses incurred in obtaining the preceding judgment. . . . If the plaintiff is successful in the suit, the probability is that the conduct of the defendant causing the suit was wrongful. . . . Under our jurisprudence the defendant may present any defense to such an action that he may have or that he may deem expedient, and in so doing he will not be

subjecting himself to a second suit by the plaintiff based on the wrongful conduct of the defendant in causing the plaintiff to sue him or in defending the action. The rule is the same even though the wrongful conduct of the defendant is willful, intentional, malicious or fraudulent." (Citations omitted.) *Ritter* v. *Ritter*, 381 Ill. 549, 554–55, 46 N.E.2d 41 (1943); accord *Pope* v. *Pollock*, 46 Ohio St. 367, 370, 21 N.E. 356 (1889) ("[w]hen the plaintiff sets the law in motion, he is the cause, if it be done groundlessly and maliciously, of [the] defendant's damage, and the defendant but stands upon his legal rights when he calls upon the plaintiff to prove his case to the satisfaction of judge and jury"); cf. *Photovest Corp.* v. *Fotomat Corp.*, 606 F.2d 704, 729 (7th Cir. 1979) ("Nothing in the case law suggests that liability may stem from the [d]efense of a lawsuit or from the decision to defend rather than settle. Such a rule would infringe basic rights in our system of jurisprudence."), cert. denied, 445 U.S. 917, 100 S. Ct. 1278, 63 L. Ed. 2d 601 (1980).

Those cases are rooted in the recognition that an action premised on a defendant's conduct in a prior action is fundamentally distinct from one premised on the conduct of a plaintiff who initiates a judicial proceeding in the first instance. Actions for vexatious litigation and malicious prosecution are predicated on "the right of an individual to be free from unjustifiable litigation [and the] wrongful initiation of civil suits." (Internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 553–54; see also W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 119, p. 870 (tort of malicious prosecution protects "[t]he interest in freedom from unjustifiable litigation"). As one judge keenly observed: "The malicious plaintiff in a civil action institutes proceedings without probable cause and with malice. . . . Because the defendant is haled into court, all of the

defendant's resulting financial, emotional, and reputational injuries are attributable to the plaintiff's malicious conduct. The malicious defendant, in contrast, raises or continues an ungrounded and malicious defense merely *to resist the claim of a plaintiff already before the court.* Unlike the defendant targeted by a malicious prosecution, *the plaintiff who encounters a malicious defense voluntarily entered the judicial system* and must be held to accept, to some degree, the costs and risks of litigation. When this plaintiff ultimately prevails in the action, at best only a portion of the plaintiff's litigation costs and damages can be attributed to the malicious defense. These differences in the position of a plaintiff and a defendant with regard to the institution of civil proceedings, the willingness of the involvement in the litigation, and the amount of damages attributable to the malicious conduct of the opposing party, are appropriately recognized by the existing discrepancy in remedies." (Citation omitted; emphasis added.) *Aranson* v. *Schroeder*, 140 N.H. 359, 372–73, 671 A.2d 1023 (1995) (Thayer, J., dissenting). That precept has been applied to defendants who plead general denials known to be untrue.[13]

[13] See, e.g., *Ritter* v. *Ritter*, supra, 381 Ill. 555 ("[a] defendant may present any defense to such an action that he may have or that he may deem expedient, and in so doing he will not be subjecting himself to a second suit by the plaintiff . . . even though the wrongful conduct of the defendant is willful, intentional, malicious or fraudulent"); *Baxter* v. *Brown*, 83 Kan. 302, 304, 111 P. 430 (1910) ("The question is this: A defendant is haled into court and required to defend against claims set forth against him in a civil action. Without asking any affirmative relief whatever, he simply files a general denial and verifies it. Although there may be many things alleged in the petition as true that he knows are true, and although he may know that it will involve the plaintiff in considerable expense to prove and establish the truth thereof, is he responsible for making such defense? . . . In this state, and quite generally in other states, it has been held that damages for malicious prosecution of a civil action as well as for a malicious criminal charge may be recovered; expenses incurred and damage to business, and even exemplary damages have been allowed in such cases. We have failed, however, to find any authority for assessing damages for a malicious defense of an action.").

The Supreme Court of Hawaii similarly has rejected malicious defense claims raised in the insurance defense context. In *Young* v. *Allstate Ins. Co.*, 119 Haw. 403, 410, 198 P.3d 666 (2008), the plaintiff brought an action against the defendants, an insurance company and its attorney, for malicious defense. The gravamen of her claim was that the defendants "took an active part in the initiation, continuation, or procurement of the defense in [her] case against [the insurer's] insured. She alleged that the defendants (1) maliciously defended the case and used the courts imprudently by acting without reasonable or probable cause and by acting with knowledge or notice that their positions lacked merit and (2) acted primarily for a purpose other than that of securing a proper adjudication of the claims and defenses, such as to harass, annoy, or injure or to cause an unnecessary delay or a needless increase in litigation costs."[14] Id., 411.

At the outset of its analysis, the Supreme Court of Hawaii noted that, "[a]lthough the torts of abuse of process and malicious prosecution are well established, the malicious defense tort is unfamiliar, if known at all." (Internal quotation marks omitted.) Id., 416. The court further stated: "This jurisdiction has not previously recognized a malicious defense claim, and we decline to do so now. We do not believe that recognizing the tort of malicious defense is necessary where (1) the threat of subsequent litigation will have a chilling effect on a party's legitimate defenses, and (2) existing rules and tort law compensate plaintiffs for the harm that they suffer when defendants' litigation tactics are brought in bad faith." Id. The court emphasized that, "by initiating the lawsuit, the plaintiff must be held to

[14] In alleging that the defendants "took an active part in the initiation, continuation, or procurement" of the defense at issue, the plaintiff's complaint mirrored the relevant language of § 674 of the Restatement (Second) of Torts.

accept, to some degree, the costs and risks of litigation." (Internal quotation marks omitted.) Id., 420. The court also noted the existence of remedies already available to a plaintiff, including the imposition of sanctions on a malicious defendant and disciplinary proceedings pursuant to the Rules of Professional Conduct. See id., 423–24; see also W. Barker et al., "Litigating About Litigation: Can Insurers Be Liable for Too Vigorously Defending Their Insureds?," 42 Tort Trial & Ins. Prac. L.J. 827, 855 (2007) ("The refusal to recognize a tort of malicious defense does not deny that appeals or other defensive activities are wrongful when conducted maliciously and in bad faith, solely for the purpose of delay. . . . However, the proper remedy for this is the application of sanctions by the court in which frivolous, dilatory litigation occurs." (Footnotes omitted; internal quotation marks omitted.)). The court thus concluded that "it is appropriate to join the majority of courts that have addressed this issue and decided not to recognize the tort of malicious defense"; *Young* v. *Allstate Ins. Co.*, supra, 119 Haw. 419; and opined that, if such a change in the law was warranted, it was "more appropriate for the legislature" to do so.[15] Id., 427 n.23.

---

[15] Like the present case, *Young* involved a defendant insurer that was not the most sympathetic party. Compare *Young* v. *Allstate Ins. Co.*, supra, 119 Haw. 407 ("By dissuading claimants from seeking legal counsel, [the defendant] was able to prey upon injured and unrepresented claimants' trust and lack of knowledge and to deny or settle claims for a fraction of their value. . . . If a settlement offer were not accepted or the claimant hired an attorney, [the defendant] would fully litigate virtually every claim, irrespective of its insured's liability or the real physical harm and value of the injuries suffered by the claimant. [The defendant] thereby sought to subject claimants to unnecessary and oppressive litigation and expenses . . . ." (Footnote omitted.)), with *Dorfman* v. *Smith*, supra, 342 Conn. 588, 613 (noting that defendant's corporate designee testified under oath that defendant " 'did not single out [the plaintiff] for special or unique treatment when it conditioned [her] receipt of [underinsured motorist] benefits [on] the provision of an affidavit of no excess insurance but was instead pursuing conduct that [the defendant] routinely takes in its handling of claims from other policyholders as well' " and that defendant " 'did not single out [the plaintiff] for special or unique treatment when it responded falsely to [her]

Courts that have declined to recognize the tort of malicious defense[16] also have emphasized the potential for endless litigation. As the Supreme Court of Ohio observed, "[i]f every suit may be retried on an allegation of malice, the evil would be intolerable, and the malice in each subsequent suit would be likely to be greater than in the first; and that, if a defendant ought to have damages upon a false claim, then the plaintiff ought to have damages on a false plea, which would make litigation interminable." *Pope* v. *Pollock*, supra, 46 Ohio St. 369; see also *California Physicians' Service* v. *Superior Court*, supra, 9 Cal. App. 4th 1325 n.2 (noting danger of endless litigation); *Ritter* v. *Ritter*, supra, 381 Ill. 555 ("[i]f the wrongful conduct of a defendant . . . would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action against the defendant for his attorney fees and expenses incurred in obtaining the preceding judgment"); *Rappaport* v. *Rappaport*, 44 Misc. 2d 523, 525, 254 N.Y.S.2d 174 (1964) ("[t]he danger of encouraging interminable litigation by [extending the tort of malicious prosecution to defenses asserted by a defendant in prior action] is also clear"), aff'd, 24 App. Div. 2d 844, 263 N.Y.S.2d 442, appeal denied, 16 N.Y.2d 487, 213 N.E.2d 697, 266 N.Y.S.2d 1025 (1965).

In addition, multiple courts have declined to impose liability on a defendant arising from its defense in a

discovery requests' "). In upholding the judgment rendered in favor of the defendant on the plaintiff's claims of malicious defense, abuse of process, and breach of an assumed duty of good faith and fair dealing, the Supreme Court of Hawaii nonetheless recognized that the legal issues presented in that case were larger than any one party. Cf. *In re Purdue Pharma L.P.*, Docket No. 22-CV-4134 (CS), 2023 WL 5950707, *5 (S.D.N.Y. September 13, 2023) ("[the court's] role is to apply the law, and that sometimes means that a sympathetic party is not entitled to relief").

[16] The term "malicious defense" is something of a misnomer, since it applies to the conduct of both defendants *and* plaintiffs in responding to claims, counterclaims, cross claims, special defenses and the like.

prior civil proceeding in the insurance context specifi-cally. See, e.g., *Rowlands* v. *Phico Ins. Co.*, supra, United States District Court, Docket Nos. Civ.A.00-477-(GMS) and Civ.A.00-485-(GMS) ("the courts which have squarely addressed this issue in the insurance context have all rejected the malicious defense claim or its equivalent"); *Hostetter* v. *Hartford Ins. Co.*, Docket No. 85C-0628, 1992 WL 179423, *8 (Del. Super. July 13, 1992) (declining "to recognize the existence of [the] tort [of malicious defense] in the context of insurance claims"), overruled in part on other grounds by *Connelly* v. *State Farm Mutual Automobile Ins. Co.*, 135 A.3d 1271 (Del. 2016); *Young* v. *Allstate Ins. Co.*, supra, 119 Haw. 426 ("we decline to adopt the tort of malicious defense"); *Kranzush* v. *Badger State Mutual Casualty Co.*, 103 Wis. 2d 56, 73, 307 N.W.2d 256 (1981) (declining to "declare the existence of a [malicious defense] cause of action in favor of the claimant against the insurer"); W. Barker et al., supra, 42 Tort Trial & Ins. Prac. L.J. 854 ("[t]he cases almost uniformly reject [the] plaintiffs' attempts to impose liability based on allegedly frivolous defenses, supposedly asserted only to delay an inevita-ble recovery").

As best I can tell, only one jurisdiction has adopted the position urged by the plaintiff in the present case.[17] In *Aranson* v. *Schroeder*, supra, 140 N.H. 363, the plain-tiffs asked the Supreme Court of New Hampshire to recognize a new cause of action for malicious defense, contending that it "is essentially the mirror image of § 674 of the Restatement [Second] of Torts . . . ." (Internal quotation marks omitted.) A divided panel of

---

[17] See, e.g., *Young* v. *Allstate Ins. Co.*, supra, 119 Haw. 418 ("only one jurisdiction has recognized the tort of malicious defense"); *Iantosca* v. *Merrill Lynch Pierce Fenner & Smith, Inc.*, Docket No. 08-0775-BLS2, 2009 WL 981389, *4 (Mass. Super. November 25, 2008) ("Massachusetts courts have never recognized a tort of malicious defense. Nor has any other jurisdiction done so, with the sole exception of New Hampshire.").

that court[18] acknowledged that "no jurisdiction has to date adopted malicious defense as a cause of action"; id., 365; but, citing to a law review article, reasoned that, "[i]n appropriate circumstances, there may be ample reason to extend the reach of the sanctions to counsel who engages in the fostering of an unfounded defense or pursues a defense for an improper purpose. . . . The difference between the adoption of the tort of malicious defense and the existing power of courts to levy sanctions is the nature and extent of the damages recoverable by the aggrieved party. Is a plaintiff less aggrieved when the groundless claim put forth in the courts is done defensively rather than affirmatively in asserting a worthless lawsuit for improper purposes? We think not." (Citation omitted.) Id., 364–65. The court thus recognized malicious defense as a cause of action under New Hampshire law. Id., 366.

At the same time, the court emphasized that, "[m]alicious defense, like its counterpart malicious prosecution, is a limited cause of action that will lie only in discrete circumstances, and malicious defense claims will accordingly be scrutinized closely and construed narrowly." Id., 366–67. It then made the following observation, which is highly relevant to the issue now before us: "We would not, for example, look favorably upon a plaintiff's threatening a malicious defense action when faced *with a defendant's general denial of liability*, for a party should not be precluded from legitimately raising a defense for fear of such an action." (Emphasis

---

[18] Justice Thayer dissented from the majority opinion, stating that "the majority's recognition of a tort of malicious defense is unwise as a matter of policy." *Aranson* v. *Schroeder*, supra, 140 N.H. 371. Justice Thayer reasoned that "plaintiffs who face a malicious and unfounded defense already have at their disposal adequate remedies for the injuries they may suffer"; id.; that "[t]he potential for increased litigation is obvious"; id., 373; and "[t]hat malicious defense is not a desirable addition to the tort law of New Hampshire is evidenced by the fact that no other jurisdiction in the country has explicitly recognized this cause of action." Id., 374.

added.) Id., 367. Accordingly, the one jurisdiction that has recognized a cause of action for malicious defense predicated on § 674 of the Restatement (Second) of Torts has expressly disavowed the imposition of liability for a defendant's general denials to a plaintiff's complaint in a prior action.

b

To resolve the dispute presently before us, it is unnecessary to decide whether to recognize the tort of malicious defense or to adopt § 674 of the Restatement (Second) of Torts. It is enough to conclude that a defendant's general denials to a complaint in a prior action cannot form the basis of a vexatious litigation action under either our common law or that section of the Restatement.[19] For three primary reasons, I would so conclude.

i

First, plaintiffs in Connecticut already have adequate remedies to deal with defendants who answer a complaint with denials that are false or made in bad faith. Pursuant to our rules of practice, plaintiffs who encounter such denials can file requests asking defendants to

---

[19] *DeLaurentis* v. *New Haven*, 220 Conn. 225, 248, 597 A.2d 807 (1991), and *Diamond 67, LLC* v. *Oatis*, 167 Conn. App. 659, 144 A.3d 1055, cert. denied, 323 Conn. 926, 150 A.3d 230 (2016), and 323 Conn. 927, 150 A.3d 228 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 228 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 229 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 230 (2016), are irrelevant to that question. *DeLaurentis* stands for the unremarkable proposition that a plaintiff who was forced to defend himself in a prior administrative proceeding may thereafter maintain an action for vexatious litigation. See *DeLaurentis* v. *New Haven*, supra, 248–49. *Diamond 67, LLC*, concerned the conduct of third parties who intervened in various administrative and mandamus proceedings between the plaintiff company and a municipal land use agency; see *Diamond 67, LLC* v. *Oatis*, supra, 662; and held merely that a genuine issue of material fact existed as to their "role in the initiation, continuation, and/or procurement of the actions in which they sought to intervene." Id., 683. Neither *DeLaurentis* nor *Diamond 67, LLC*, concerned a defendant's liability for denials pleaded in response to a plaintiff's complaint in a prior action.

revise their answers. See Practice Book § 10-35 (authorizing any party to file request to revise to obtain "the deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations in an adverse party's pleading"); *Melfi* v. *Danbury*, 70 Conn. App. 679, 684–86, 800 A.2d 582 (request to revise properly used to delete improper statements from adverse pleading), cert. denied, 261 Conn. 922, 806 A.2d 1061 (2002).

Plaintiffs confronted with what they believe to be improper denials also may file requests for admissions soon after an answer is filed. As this court has observed, "Requests for admissions are governed by Practice Book §§ 13-22 through 13-25. . . . A party's response to a request for admissions is binding as a judicial admission unless the judicial authority permits withdrawal or amendment. . . . Similarly, a failure to respond timely to a request for admissions means that the matters sought to be answered were conclusively admitted." (Citations omitted; internal quotation marks omitted.) *East Haven Builders Supply, Inc.* v. *Fanton*, 80 Conn. App. 734, 744, 837 A.2d 866 (2004). If the plaintiff in the present case believed that the defendant's answers to her complaint in the prior action were false or that the defendant had refused to admit certain allegations "with a malicious intent to unjustly vex and trouble her and to force her to incur increased litigation costs"—as she now alleges in this vexatious litigation action—she could have sought judicial admissions with respect to any such allegations early in the pleading stage of that prior action, potentially obviating much of the litigation that followed. See, e.g., *Allied Grocers Cooperative, Inc.* v. *Caplan*, 30 Conn. App. 274, 279–80, 620 A.2d 165 (1993) ("[b]ecause [the defendant] did not respond to the request for admissions [regarding the defendant's liability], those facts were conclusively established for purposes of this action"); *Wilkinson* v.

*Shoney's, Inc.*, supra, 269 Kan. 205 (emphasizing, in declining to recognize malicious defense cause of action predicated on § 674 of Restatement (Second) of Torts, that "parties against whom claims are made are . . . obligated to make admissions if requested"). Indeed, the plaintiff did precisely that when she filed a request for admissions in 2018; in response, the defendant admitted, inter alia, that the motor vehicle collision at issue was directly and proximately caused by the negligence of the operator of the motor vehicle that collided with the plaintiff's vehicle and that the plaintiff suffered bodily injury as result thereof.

Furthermore, under our rules of practice, a party may move for summary judgment "as a matter of right *at any time* if no scheduling order exists and the case has not been assigned for trial." (Emphasis added.) Practice Book § 17-44; see also *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 867 n.8, 675 A.2d 441 (1996) ("a party may move for summary judgment at any time"). If the plaintiff in the prior action believed that the defendant's answers to certain allegations in her complaint regarding its liability were false or untenable, for example, she could have promptly moved for summary judgment on the issue of liability. See, e.g., *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 282, 472 A.2d 306 (1984) ("[t]he plaintiff successfully moved for summary judgment as to liability against all three defendants on the first count of the complaint"); *Teachers Ins.* v. *Broad & Hanrahan*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-93-0132304-S (June 28, 1995) (granting motion for summary judgment as to liability filed less than two months after plaintiff filed amended complaint). The plaintiff here declined to do so.

Plaintiffs in Connecticut who encounter denials in an answer that are false or made in bad faith also are not without statutory recourse. Our legislature enacted

General Statutes § 52-99 to address that issue specifi-
cally.[20] As our Supreme Court explained, § 52-99 "allows
parties to seek monetary sanctions from the trial court
for allegations and denials within parties' pleadings
made without reasonable cause and found to be
untrue."[21] *Dorfman* v. *Smith*, supra, 342 Conn. 611–12.
In addition, it is well established that "the trial court has
the inherent authority to sanction parties for litigation
misconduct." Id., 612; see also *CFM of Connecticut,
Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108
(1996) (trial court "has the inherent authority to impose
sanctions against an attorney and his client for a course
of claimed dilatory, bad faith and harassing litigation
conduct" (internal quotation marks omitted)), over-
ruled in part on other grounds by *State* v. *Salmon*, 250
Conn. 147, 735 A.2d 333 (1999). The trial court likewise
possesses inherent authority "to assess attorney's fees
when the losing party has acted in bad faith, vexatiously,
wantonly or for oppressive reasons. . . . This bad faith
exception applies, not only to the filing of an action,
but also in the conduct of the litigation. . . . It applies
both to the party and his counsel." (Internal quotation
marks omitted.) *Lederle* v. *Spivey*, 332 Conn. 837, 844,
213 A.3d 481 (2019). Nothing prevented the plaintiff in
the prior action from seeking costs, attorney's fees, or
the imposition of sanctions in the face of allegedly false
or bad faith denials by the defendant.

ii

Second, I am mindful that a defendant's answer to a
plaintiff's complaint is a preliminary pleading that must

---

[20] General Statutes § 52-99 provides in relevant part: "Any allegation or
denial made without reasonable cause and found untrue shall subject the
party pleading the same to the payment of such reasonable expenses, to
be taxed by the court, as may have been necessarily incurred by the other
party by reason of such untrue pleading . . . ." Our rules of practice contain
a reciprocal provision. See Practice Book § 10-5.

[21] As our Supreme Court observed in *Dorfman* v. *Smith*, supra, 342 Conn.
609, "§ 52-99 demonstrates that other remedies exist for addressing . . .
the alleged conduct" of the defendant in the prior action.

be filed within thirty days of the return date.[22] See Practice Book § 10-8. Significantly, the purpose of pleadings in this state is *not* to determine the truth of the allegations contained therein. Rather, "[p]leadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise." (Internal quotation marks omitted.) *Birchard* v. *New Britain,* 103 Conn. App. 79, 83, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007); see also *Biller* v. *Harris,* 147 Conn. 351, 357, 161 A.2d 187 (1960) ("[t]he purpose of pleadings is to apprise the court and opposing counsel of the issues to be tried"); *Thames River Recycling, Inc.* v. *Gallo,* 50 Conn. App. 767, 782, 720 A.2d 242 (1998) ("essential purpose" of pleadings is to limit issues to be tried); 71 C.J.S. 34, Pleading § 2 (2022) ("[t]he purpose of pleadings is to frame, present, define, and narrow the issues and to form the foundation of, and to limit, the proof to be submitted on the trial").

"In a civil action the general burden of proof rests on the plaintiff . . . ." *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 358, 294 A.2d 305 (1972); see also *Ivimey* v. *Watertown,* 30 Conn. App. 742, 753, 622 A.2d 603 ("[i]t is elementary that in a civil action, the plaintiff bears the burden of proof on all essential elements of a claim"), cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993). When a defendant answers a complaint, it alerts the plaintiff and the court to the issues in dispute, thereby leaving the plaintiff to its burden of proof. See

---

[22] When a defendant files an answer in accordance with our rules of practice, it often does so days or weeks after receiving a complaint, and before it has had the opportunity to conduct discovery or depose relevant parties such as the plaintiff. For that reason, it is not unusual for a defendant to file an amended answer pursuant to Practice Book § 10-60 or § 10-61. See, e.g., *Ed Lally & Associates, Inc.* v. *DSBNC, LLC,* 145 Conn. App. 718, 740–41, 78 A.3d 148 (defendants filed third amended answer more than one year after complaint was filed and seven weeks before "trial was due to begin"), cert. denied, 310 Conn. 958, 82 A.3d 626 (2013).

*Hally* v. *Hospital of St. Raphael*, supra, 358 ("when an answer denies several paragraphs of the complaint the burden of proving each separate, material issue of fact that was raised is thrown on the plaintiff"); *Eastern Consolidators, Inc.* v. *W. L. McAviney Properties, Inc.*, 159 Conn. 510, 510–11, 271 A.2d 59 (1970) (defendant's general denial in answer "put these allegations in issue, with the burden on the plaintiff to prove them"); see also *Argentinis* v. *Gould*, 23 Conn. App. 9, 16, 579 A.2d 1078 (1990) ("[a] general denial does not place any burden on the denier"), rev'd in part on other grounds, 219 Conn. 151, 592 A.2d 378 (1991). In Connecticut, general denials are commonplace. See, e.g., *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 239, 866 A.2d 629 (2005) ("[t]he defendant's answer set forth only general denials of the plaintiff's allegations"); *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 368, 783 A.2d 36 ("[t]he defendants' answer contains a general denial"), cert. denied, 258 Conn. 938, 786 A.2d 426 (2001); *Monterose* v. *Cross*, 60 Conn. App. 655, 661, 760 A.2d 1013 (2000) ("[i]n this case, there was a general denial and a special defense of contributory negligence"); *Nesbitt* v. *Mulligan*, 11 Conn. App. 348, 352, 527 A.2d 1195 ("[t]he defendants' answer consisted merely of a general denial of the plaintiff's allegations of negligence"), cert. denied, 205 Conn. 805, 531 A.2d 936 (1987). Given the purpose and common practice of pleadings in this state, I believe that expanding our common-law vexatious litigation action to encompass a defendant's general denials to a complaint is ill-advised and will wreak havoc on our civil courts.

iii

Third, additional dangers abound. The expansion of the common-law action for vexatious litigation undoubtedly will result in more, and potentially interminable, litigation. See *California Physicians' Service* v. *Superior Court*, supra, 9 Cal. App. 4th 1325 n.2; *Ritter*

v. *Ritter*, supra, 381 Ill. 555; *Rappaport* v. *Rappaport*, supra, 44 Misc. 2d 525. The risk of wasting "precious judicial resources"; *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 82, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018); will only increase.

In addition, I am particularly concerned about engendering conflict between attorneys and their clients. The preamble to our Rules of Professional Conduct states that, "[a]s advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." Rules of Professional Conduct, preamble, p. 1. At the same time, "[a] lawyer shall not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous"; Rules of Professional Conduct 3.1; and shall not "assist a client . . . in conduct that the lawyer knows is . . . fraudulent . . . ." Rules of Professional Conduct 1.2 (d). Lawyers in this state likewise are prohibited from knowingly making "a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made"; Rules of Professional Conduct 3.3 (a) (1); and are obligated to "make reasonable efforts to expedite litigation consistent with the interests of the client." Rules of Professional Conduct 3.2. Those precepts are not empty bromides but, rather, expose attorneys to professional discipline. See Rules of Professional Conduct, preamble, p. 3 ("[f]ailure to comply with an obligation or prohibition imposed by a [r]ule is a basis for invoking the [attorney] disciplinary process").

If pleading a denial in response to a civil complaint constitutes a proper basis for a vexatious litigation action, I fear increased conflict between clients and their attorneys in light of those professional obligations. As the Supreme Court of Hawaii recognized, "[t]he creation of the tort of malicious defense and recognizing

potential liability for defendants . . . may have a chilling effect on some legitimate defense and perhaps drive a wedge between defendants seeking zealous advocacy and defense attorneys who fear personal liability in a second action. . . . The risk of compromising a defendant's right to vigorous and zealous advocacy by virtue of the threat of a subsequent lawsuit [is] too great to justify the recognition of the tort of malicious defense." (Citation omitted; internal quotation marks omitted.) *Young* v. *Allstate Ins. Co.*, supra, 119 Haw. 419–20; see also *Aranson* v. *Schroeder*, supra, 140 N.H. 373 (Thayer, J., dissenting) ("[The] potential for conflict between the interests of defendants and their attorneys can only be expected to undermine the goals of [the Rules of Professional Conduct]. Attorneys may give priority to their own interests when formulating defense strategies, and they may be tempted to disclose the client's role in pursuing specific defense tactics in order to shield themselves from personal attack."). Furthermore, the prospect of a subsequent vexatious litigation action could be wielded strategically against defendants by shrewd attorneys whose clients, as plaintiffs, shoulder the burden of proof in all civil actions in this state.[23] See *Hally* v. *Hospital of St. Raphael*, supra, 162 Conn. 358.

I recognize that there is no Connecticut authority precluding this court from expanding our common-law vexatious litigation action to encompass a defendant's denials to a complaint. Given the grave implications for practitioners and parties alike, I nevertheless am troubled by the prospect of this court doing so, particularly when this novel issue has not been thoroughly vetted by members of our profession in the form of

---

[23] See 4 Restatement (Second), Torts § 767, comment (c), pp. 30–31 (1979): "Litigation and the threat of litigation are powerful weapons. When wrongfully instituted, litigation entails harmful consequences to the public interest in judicial administration as well as to the actor's adversaries."

amicus briefs or proceedings before the Rules Committee of the Superior Court or the General Assembly.

### c

The majority today articulates a holding regarding pleading practice that will reverberate through every civil courthouse in this state.[24] Our Supreme Court has long "eschewed the notion that pleadings should be read in a hypertechnical manner." (Internal quotation marks omitted.) *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023). There is an ocean of difference between an inartfully or even negligently pleaded answer on the one hand and the kind of malicious conduct that vexatious suits are intended to punish on the other. In light of today's decision, the mere denial of an allegation in a civil pleading—whether in response to a claim, counterclaim, cross claim, or special defense—may subject attorneys and their clients to the daunting prospect of defending a vexatious litigation action, and exposure to double and treble damages. For all of the foregoing reasons, I believe that such expansion of our common-law cause of action for vexatious litigation is unwarranted.

### B

Even if I were to conclude otherwise, the plaintiff still cannot prevail. Apart from my concern about the proper scope of a vexatious litigation action, I believe that the defendant had a good faith basis to plead general denials to the allegations of the complaint in the prior action.

"[I]n the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good

---

[24] I am aware of not a single case from any jurisdiction, and neither the plaintiff nor the majority has identified any, in which a court has held that an action for vexatious litigation properly may be predicated on a party's denial of a paragraph of a complaint.

faith belief in the facts alleged and the validity of the claim asserted." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991). "[P]robable cause may be present even where a suit lacks merit. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." (Citation omitted; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 103–104. "In either [a common-law or statutory vexatious litigation] action . . . [t]he existence of probable cause is an absolute protection . . . ." (Citation omitted; internal quotation marks omitted.) Id., 94.

As recited in her August 21, 2019 complaint in the present case, the plaintiff predicates her vexatious litigation claims on certain allegations from her complaint in the prior action.[25] Causation was an integral part of

---

[25] In paragraph 8 of the first count of her August 21, 2019 complaint in the present action, the plaintiff alleges in relevant part: "In [the prior action, the plaintiff] set forth the following factual allegations:

"a. As Joscelyn M. Smith approached the aforementioned intersection, he failed to stop or slow his vehicle, and collided with [the plaintiff's] vehicle as she proceeded through the intersection, *causing the harms and losses set forth below*;

"b. Said collision and the resulting injuries, damages and losses sustained by [the plaintiff] were *directly and proximately caused* by [Smith's] negligence and/or carelessness . . . .

"c. *As a direct and proximate result* of said collision, caused by [Smith's] negligence and/or carelessness, [the plaintiff] suffered physical injuries, some, or all of which are likely to be permanent in nature . . . .

"d. *As a further direct and proximate result* of [Smith's] negligence and/or carelessness, [the plaintiff] was forced to expend sums [for medical care and treatment] . . . .

"e. *As a further direct and proximate result* of [Smith's] negligence and/or carelessness, [the plaintiff] was forced to miss time from work and lose wages . . . .

"f. *As a further direct and proximate result* of the negligence and/or carelessness of [Smith], [the plaintiff] has been permanently impaired in her ability to pursue and enjoy life's activities and pleasure, including suffering emotional distress . . . .

"g. At the time of the . . . accident . . . [Smith] . . . was underin-

those allegations, which allege both that the plaintiff's injuries were directly and proximately caused by the negligence of the underinsured motor vehicle operator involved in the automobile accident, and that the defendant was liable to the plaintiff for the damages that were caused by the tortfeasor's negligence and were not covered by the tortfeasor's insurance coverage.[26] In its answer to the plaintiff's November 25, 2015 amended complaint, the defendant stated, with respect to the allegations now at issue,[27] that it was "without sufficient information to either admit or deny the allegations, *and, therefore, denies the allegations* and leaves the plaintiff to her proof." (Emphasis added.)

The defendant filed an amended answer on December 15, 2016, in which it admitted the truth of certain allegations that it had denied in its previous answer.[28] As to the other allegations material to this appeal, the defendant again stated that it was "without sufficient information

sured . . . .

"h. [The plaintiff] has complied with her duties under the insurance contract between herself and the defendant . . .

"i. The defendant . . . is liable to [the plaintiff] pursuant to the terms of the above-mentioned insurance contract for *damages resulting from the* bodily injury sustained by [the plaintiff] which were not compensated for by the other involved operator's insurance coverage." (Emphasis added.)

[26] As the trial court noted in its memorandum of decision, "the factual predicate for all counts [set forth in the plaintiff's complaint] are the allegations of the inappropriate denial of liability and damages."

[27] In that answer, the defendant admitted the truth of other allegations set forth in count two of the plaintiff's amended complaint, which are not at issue in this vexatious litigation action.

[28] Specifically, the defendant admitted that, "[o]n or about September 27, 2014, at approximately 10 a.m., the plaintiff was operating a motor vehicle in an easterly direction on Elmfield Street, a public thoroughfare located in West Hartford, Connecticut, and was approaching the intersection of Somerset Street and Elmfield Street"; that "the accident was caused by Joscelyn Smith's failure to keep a proper and reasonable lookout for other motor vehicles upon the roadway"; and that the plaintiff "has complied with her duties to date [under the insurance policy between herself and the defendant] but the policy requires the plaintiff to comply with continuing duties and obligations."

to either admit or deny the allegations, and, therefore, denies the allegations and leaves the plaintiff to her proof." See footnote 1 of this opinion.

On April 12, 2017, the plaintiff filed her second amended complaint. Count two of that complaint alleged breach of contract on the part of the defendant. In paragraphs 6 through 11, the plaintiff alleged that she sustained injuries and damages that were caused by the negligence of Joscelyn M. Smith.[29] In both its June 14, 2017 answer and September 5, 2017 revised answer to the plaintiff's April 12, 2017 second amended complaint, the defendant generally denied those allegations.[30]

---

[29] In paragraphs 6 through 11, the plaintiff alleged in relevant part:

"6. As [Smith] approached the intersection, he failed to stop or slow his vehicle, and collided with [the plaintiff's] vehicle as she proceeded through the intersection, *causing the harms and losses* set forth below.

"7. Said collision and the resulting injuries, damages and losses sustained by [the plaintiff] were *directly and proximately caused* by [Smith's] negligence and/or carelessness . . . .

"8. *As a direct and proximate result* of said collision, caused by [Smith's] negligence and/or carelessness, [the plaintiff] suffered physical injuries, some, or all of which are likely to be permanent in nature . . . .

"9. *As a further direct and proximate result* of [Smith's] negligence and/or carelessness, [the plaintiff] was forced to expend sums [for medical care and treatment] . . . .

"10. *As a further direct and proximate result* of [Smith's] negligence and/or carelessness, [the plaintiff] was forced to miss time from work and lose wages . . . .

"11. *As a further direct and proximate result* of the negligence and/or carelessness of [Smith], [the plaintiff] has been permanently impaired in her ability to pursue and enjoy life's activities and pleasure." (Emphasis added.)

[30] Although it acknowledges that the issue of causation was raised in various paragraphs of the plaintiff's complaint, the majority suggests that an action for vexatious litigation properly may be predicated on the defendant's allegedly evasive denials of *portions* of those paragraphs. I respectfully disagree. It is well established that Connecticut courts do not read pleadings in a hypertechnical manner. See *Carpenter* v. *Daar*, supra, 346 Conn. 128. Moreover, plaintiffs that are unsatisfied with a defendant's answer to a particular paragraph of a complaint have multiple avenues of recourse under our rules of practice. They may file requests to revise pursuant to Practice Book § 10-35 or requests for admission pursuant to Practice Book § 13-22. Alternatively, plaintiffs who have alleged multiple factual allegations in a

On appeal, the plaintiff submits that it was improper for the defendant to do so in light of the fact that (1) the tortfeasor caused the motor vehicle accident in question and (2) the tortfeasor was underinsured. As she states in her appellate reply brief, "insurance companies *are not entitled to litigate* against their own insureds when there is no basis in fact for their litigation position. . . . [R]equiring the insureds to engage in lengthy litigation just to obtain the benefit of the insurance policies for which they have paid a premium . . . is textbook vexatious litigation and precisely what [the defendant] did here." (Emphasis added.)

I respectfully disagree. In my view, a defendant in a motor vehicle negligence action always may dispute whether the negligent conduct in question caused the injuries and damages complained of by a plaintiff, even when liability is not contested.[31] See, e.g., *General Accident Ins. Co.* v. *Mortara*, 314 Conn. 339, 353, 101 A.3d 942 (2014) (discussing uninsured motorist benefits case in which "the disputed issue did not pertain to insurance coverage, but to damages that would have been recoverable from the tortfeasor"); *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 488, 610 A.2d 1212

single paragraph—as the plaintiff did here—may amend the complaint, either as of right pursuant to Practice Book § 10-59 or by leave of the court pursuant to Practice Book § 10-60, to allege each factual allegation distinctly.

In this regard, I am mindful of the many attorneys in this state who toil in the trenches of civil practice on a daily basis, where general denials, requests to revise, requests for admissions, and amended complaints are commonplace. Although the failure to admit a portion of a paragraph of a complaint may give rise to monetary sanctions pursuant to § 52-99, sanctions ordered by the court pursuant to its inherent authority; see *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 393; and even an award of attorney's fees; see *Lederle* v. *Spivey*, supra, 332 Conn. 844; I do not believe that it should give rise to a civil action for vexatious litigation.

[31] The issue of causation frequently implicates (1) the credibility of witnesses, such as plaintiffs, medical providers and experts, (2) the related issue of whether a plaintiff has any preexisting injuries, and (3) the extent of any pain and suffering sustained by a plaintiff, a notoriously difficult type of damage to measure.

(1992) (defendant uninsured motorist insurance carrier disputed only "the amount of damages" plaintiff sustained); *Trujillo* v. *Chekas*, 139 Conn. App. 675, 678, 59 A.3d 245 (2012) (plaintiff in action to recover uninsured motorist benefits "failed to carry his burden of establishing the threshold question of causation, which was contested at trial"); *Caprood* v. *Atlanta Casualty Co.*, 80 Conn. App. 338, 339, 835 A.2d 74 (2003) ("[t]he defendant [uninsured motorist insurance carrier] denied that the plaintiff had been injured *as a result of* the negligent conduct of the hit-and-run driver" (emphasis altered)); *Garcia* v. *ITT Hartford Ins. Co.*, 72 Conn. App. 588, 590, 805 A.2d 779 (2002) (answer filed by defendant uninsured motorist insurance carrier "denied most of the allegations in the complaint"); *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 467–68, 760 A.2d 117 (2000) ("[t]he defendant [uninsured motorist insurance carrier] admitted that the tortfeasors were negligent, but contested the causal relationship between the accidents and the injuries claimed, as well as their extent"), aff'd, 257 Conn. 359, 777 A.2d 681 (2001). Simply put, liability for a motor vehicle accident is different from liability for injuries allegedly sustained therein.

Moreover, the record before us reflects that, subsequent to the filing of the defendant's answers, the plaintiff filed a request for admissions. See part II A (2) (b) (i) of this opinion. In response, the defendant admitted, inter alia, that the motor vehicle collision at issue was caused by the negligence of the operator of the motor vehicle that collided with the plaintiff's vehicle and that the plaintiff suffered bodily injury as result thereof. As a result of those admissions, the issues that remained for trial were narrowed, and the primary dispute concerned the extent of the damages sustained by the plaintiff that were caused by the negligent conduct of the tortfeasor.

In that regard, the record indicates that the underinsured motorist insurance policy at issue in this case provided $250,000 in coverage. The record also indicates that, sometime prior to January 5, 2016, the plaintiff released her claim against the tortfeasor, Smith, in exchange for his $50,000 policy limit. After taking into account the $50,000 that she received from the tortfeasor, the plaintiff sought to recover the sum of $200,000 from the defendant in the prior action, filed an offer of compromise to that effect,[32] and rejected offers of compromise by the defendant for less than that amount.[33] When the defendant declined to settle for $200,000, a trial followed. The jury thereafter returned a verdict in favor of the plaintiff, and the court rendered judgment in her favor in the amount of $119,928. The fact that the plaintiff recovered $80,072 *less* than the $200,000 she had sought to recover from the defendant is, in my view, prima facie evidence that the defendant had probable cause to deny the material allegations of the plaintiff's complaint.

That undisputed fact also raises the question of whether, for purposes of a vexatious litigation analysis, the prior proceeding truly "terminated in the plaintiff's favor." *Rioux* v. *Barry*, supra, 283 Conn. 347; see also *MacDermid, Inc.* v. *Leonetti*, 158 Conn. App. 176, 184, 118 A.3d 158 (2015) ("[the] favorable termination requirement is an essential element of a vexatious litigation claim"). Because the defendant was successful in litigating the prior action—insofar as the plaintiff recovered $80,072 less than the amount that she sought to recover from the defendant—the prior action arguably terminated in the defendant's favor for purposes of

---

[32] On May 15, 2017, the plaintiff filed an offer of compromise, in which she offered to "resolve this case" for $200,000.

[33] On April 24, 2017, the defendant filed an offer of compromise, in which it offered to settle the plaintiff's claims for $25,000. It thereafter filed a second offer of compromise on April 2, 2018, in which it increased its settlement offer to $35,000.

determining whether its conduct in answering the complaint was vexatious.

As our Supreme Court has noted, "[f]avorable termination of [a plaintiff's] suit often establishes lack of merit . . . ." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 103. I suggest the corollary is also true when a defendant elects to contest the issue of whether the negligent conduct in question caused the injuries and damages complained of by a plaintiff. If a defendant decides to have the jury resolve that issue because it does not agree that the plaintiff is entitled to the full amount of damages sought, and the jury then vindicates that decision by awarding the plaintiff something much less than that amount, I submit that such a ruling is both favorable to the defendant and a per se indication that it possessed probable cause to litigate the issue.

In light of the foregoing, I would conclude that the trial court properly determined that the defendant had probable cause to answer the plaintiff's complaint as it did. Because the existence of probable cause in the vexatious litigation context is a question of law; see id., 94; I would further conclude that the court properly rendered summary judgment in favor of the defendant with respect to the pleading of general denials in its answer. I, therefore, respectfully dissent in part.